ROBERT A. BURTON *v.* GENERAL MOTORS CORPORATION.

[No. 2-976A361. Filed February 21, 1977.]

---

*Walter E. Bravard, Jr., Richards, Bennett and Bravard,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles M. Russell, Walter F. Lockhart,* Deputies Attorney General, for appellee.

ROBERTSON, C.J.—Plaintiff-appellant Robert A. Burton (Burton) seeks review of a negative award entered by the Full Industrial Board of Indiana (the Board) which denied him benefits from the Second Injury Fund as compensation for injuries sustained while in the employ of defendant-appellee General Motors Corporation (General Motors). Burton claims that the award is contrary to law.

The facts and evidence most favorable to the Industrial Board's decision are as follows:

Burton was continuously employed by the Delco-Remy Division of General Motors Corporation from August, 1955, until May 23, 1968, at a wage in excess of the statutory minimum.

On October 8, 1962, Burton received a back injury, arising out of and in the course of his employment, for which he filed an application for Adjustment of Claim for Compensation (Form #9) with the Industrial Board. On May 13, 1965, he received a rating of 15% permanent partial impairment of the man as a whole from the Board.

On March 20, 1965, after returning to work, while assisting another worker who was using heavy equipment to move a

skid, Burton was knocked off his feet and fell on some steel angle iron which penetrated his rectum and caused internal injuries. Burton received medical treatment, including surgery, and continued his employment with General Motors until May 25, 1968.

Some time subsequent to the March 20, 1965, injury and during his employment by General Motors, Burton developed a hernia while attempting to lift or move a 3000 lb. metal die-cast. Surgery followed in late 1966 or early 1967, which resulted in his loss of a testicle. During Burton's periods of disability following the injury from the angle iron and the later incident giving rise to the hernia, he was provided with medical treatment and sick benefits from General Motors.

Burton failed to file a claim for workmen's compensation with the Industrial Board in connection with either the angle iron injury or the incident giving rise to the hernia.

General Motors placed Burton on medical sick leave in May, 1968, and total disability in May, 1969. Burton then filed a complaint for damages against General Motors in Federal court on March 5, 1970, alleging fraudulent misrepresentation by General Motors in connection with the injuries of March 20, 1965, and the later hernia. As a result of the action in federal court, Burton and General Motors reached a settlement whereby Burton received a sum of $6,000 and both parties agreed that Burton had a seventy-eight per cent (78%) "Permanent Partial Impairment" to his body at the time. The compromise settlement reached in federal court by the parties did not qualify as impairment award made under the authority and jurisdiction of the Indiana Industrial Board as the Board was not a party to the federal litigation nor was the Board petitioned by the parties to establish, by hearing or compromise agreement, an ascertainment of Burton's permanent partial impairment.

Burton claimed that by virtue of the 1965 award of the fifteen per cent (15%) permanent partial impairment result-

ing from his back injury and the settlement agreement arrived at in the federal court action which stated that Burton had a "78% Permanent Partial Impairment", he is now entitled to have a permanent partial impairment rating of ninety-three per cent (93%).

The Industrial Board found that the compromise settlement between the parties was not an impairment award made under the authority and jurisdiction of the Board and, as such, was not subject to recognition by the Board under the Indiana Workmen's Compensation Act. The Board also determined that Burton had been declared totally disabled by the Social Security Administration and that he had exhausted all previous benefits payable under the single award of the Industrial Board in 1965.

The Board denied Burton's claim for benefits from the Second Injury Fund (§ 33(a) of the Workmen's Compensation Act, IC 1971, 22-3-3-13 (Burns Code Ed.)), because he failed to establish that he was entitled to, received, and exhausted the maximum five hundred weeks of benefits available under Section 31(a)(2) (IC 1971, 22-3-3-10(a)(2)), or Section 31 (b)(3) (IC 1971, 22-3-3-10(b)(3)). Burton instituted appellate proceedings on October 7, 1976, with the filing of his Record of Proceedings.

In his assignment of errors, Burton asks this Court to find that the Order of the Industrial Board denying him an award from the Second Injury Fund is contrary to law; is not based on sufficient facts to sustain the order; and is not based on sufficient evidence to sustain the findings of fact.

Burton acknowledges that this Court's scope of judicial review of an award by the Industrial Board is limited to the examination of evidence of sufficient probative value to sustain the Board's decision.[2] *Smith* v. *Graver Tank & Mfg. Co.* (1973), 158 Ind. App. 431, 302 N.E. 2d 852.

2. IC 1971, 22-3-4-7 (Burns Code Ed.) IC 1971, 22-3-4-8 (Burns Code Ed.)

The Industrial Board may be reversed only if it should appear to this Court that the evidence was devoid of probative value and that the quantum of legitimate evidence in support of the Board's finding was so proportionately meager as to show that the findings did not rest upon a rational basis or that the results must have been substantially influenced by improper considerations. *Pollock* v. *Studebaker Corp.* (1952), 230 Ind. 622 at 625, 105 N.E.2d 513 at 514.

It has long been stated that the Industrial Board's findings will not be disturbed on review by the Court of Appeals unless the evidence is undisputed and leads conclusively to a result contrary to that reached by the Board. *Gordon Landscaping, Inc.* v. *Bowers* (1975), 163 Ind. App. 568, 325 N.E.2d 520.

This Court's review of the negative award herein is confined to an examination of the evidence in order to determine whether the Board's finding was *not* based upon a substantial factual foundation. *Callahan* v. *Lovelace Truck Service* (1973), 158 Ind. App. 164, 301 N.E.2d 801. Before there can be a reversal of a negative award of the Industrial Board on the basis of evidence, it is necessary that all the evidence be in appellant's favor and be so conclusive in its nature and character as to force conclusions in the minds of reasonable men which are contrary to that reached by the Board. *Davis* v. *Webster* (1964), 136 Ind. App. 286, 198 N.E.2d 883.

> It is the burden of the claimant-appellant of a negative award to prove his right to compensation. *Dooley* v. *Richard's Standard Service* (1969), 145 Ind. App. 470, 251 N.E.2d 449.

The proper procedure for Burton to secure compensation for injuries suffered as a result of his employment is to file an Application for Compensation (Form #9) within two years from the date of the injury as required by IC 1971, 22-3-3-3 (Burns Code Ed.) :

> "22-3-3-3 [40-1224]. Limitation for filing claim. The right to compensation under this act [22-3-3-1—22-3-6-3] shall be forever barred unless within two [2] years after the

occurrence of the accident, or if death results therefrom, within two [2] years after such death, a claim for compensation thereunder shall be filed with the industrial board. . . ."

Here, Burton failed to avail himself of the protection of the Workmen's Compensation Act. He did not file a Form #9 for either the angle iron injury of March 20, 1965, or the subsequent incident concerning the hernia although he was aware of the proper procedure for such an application, having previously received an award for a back injury in 1962. Neither was a Compensation Award executed between the parties and approved by the Industrial Board.

In the past, the Indiana Court of Appeals has given careful consideration to statutory time limitations such as the two-year limitation for filing a claim as found in IC 1971, 22-3-3-3 (Burns Code Ed.). As Judge Sharp stated in *Wawrinchak* v. *U.S. Steel Corp., Gary Works* (1971), 148 Ind. App. 444 at 451, 267 N.E.2d 395 at 399:

> " 'A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action of the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability. Whether an enactment is of this nature, or whether it is a statute of limitations, should be determined from a proper construction of its terms.' 34 Am.Jur., Limitation of Actions, § 7, page 16; *Wilson* v. *Betz Corporation et al.* (1959), 130 Ind. App. 83, 159 N.E.2d 402.

"A general statute of limitations creates a defense to a cause of action which must be pleaded or the defense is waived. Such a statute is not self-executing. Certain acts of misconduct or acts constituting fraud or acts constituting estoppel may extend the time for commencing the cause of action. These are all characteristics of a general statute of limitations, with which we are all very familiar. We may not be as familiar with a nonclaim statute or a statute of creation as it is sometimes called.

"A nonclaim statute creates a right of action and has inherent in it the denial of a right of action. It imposes a condition precedent—the time element which is a part of the action itself. As pointed out in *Donnella, Admrx.* v. *Crady* (1962), 135 Ind. App. 60, 185 N.E.2d 623, *'Unless the claim is filed within the prescribed time set out in the statute, no enforceable right of action is created.'* The nonclaim statute is self-executing where the general statute of limitations is not. Even the rule of waiver has no application to the nonclaim statute, and the time element is not a defense as in the general statute of limitations. Moreover, such nonclaim statutes may not be extended. As this court pointed out in *Donnella* v. *Crady, supra,* at pages 63 and 64, 185 N.E.2d at page 625; *'Such statutes are not extended by the disability, fraud or misconduct of the parties.* The time to act cannot be waived by the parties or lengthened by the court. *Unless the claim is filed or the action thereon brought within the time prescribed by the said statute, any right of action then existing becomes unenforceable and the claim or action is forever barred.'*

"This Court further stated in *Otolski* v. *Estate of Nowicki* (1959), 129 Ind. App. 492, page 497, 158 N.E.2d 296 that 'A statute of this type has been referred to as not being a statute limiting the remedy, or, in other words, a statute of limitation, but as a statute constituting a denial of a right of action and imposing a condition precedent to the enforcement of such right of action.' " (Emphasis added)

Since no applications for award were made with respect to the March 20, 1965, angle iron injury and the later incident concerning the hernia, such claims were thus barred by the nonclaim provisions of IC 1971, 22-3-3-3 and 22-3-3-27.

Burton maintains that his failure to file the proper applications with the Industrial Board were the result of fraud perpetrated by General Motors with reference to the source of

benefits and medical treatment for the March 20, 1965, angle iron injury and the later hernia. Where, as here, there is an allegation of fraud, mistake, or duress attributable to an employer, the court has recognized the proper remedy to be an application to vacate on the grounds of fraud, mistake, or duress, and such applications will be scrutinized closely by the Industrial Board and cautiously granted. *Ritman* v. *Wass* (1955), 125 Ind. App. 348, 125 N.E.2d 33.

Burton asserts that Section 33(a) of the Workmen's Compensation Act, which creates the Second Injury Fund, would be applicable to his situation in that the back injury of 1962 would constitute his original injury and the March 20, 1965, angle iron injury would be a "subsequent industrial accident" as referred to in Section 33(a) (IC 1971, 22-3-3-13) which appellant cites in part:

> "Subsequent permanent injury—Liability of employer— Second Injury Fund.—If an employee who from any cause, whether in line of employment or otherwise, had lost, or lost the use of, one [1] hand, one [1] arm, one [1] foot, one [1] leg, or one [1] eye, and in *a subsequent industrial accident* becomes permanently and totally impaired by reason of the loss, or loss of use of, another such member or eye, the employer shall be liable only for the compensation payable for such second injury: Provided, however, That in addition to such compensation and after the completion of the payment therefor, the employee shall be paid the remainder of the compensation that would be due for such total permanent impairment out of a special fund known as the 'second injury fund,' and created in the following manner: . . ." (Emphasis added)

Subsequent language in the above statute requires a claimant's adherence to the regulations and procedures of the Industrial Board in order to qualify for compensation under this section. That language is as follows:

> "Such sums shall be paid by the industrial board of Indiana to the treasurer of state, to be deposited in a special account known as the 'second injury fund,' and which said funds shall not be a part of the general fund of the State of Indiana, and any balance remaining in said account at the end of any fiscal year shall not revert to said general fund.

*Said funds shall be used only for the payment of awards of compensation and expense of medical examinations or treatment made and ordered by the industrial board of Indiana* and *chargeable against said fund pursuant to the provisions of this section,* and shall be paid for that purpose by the treasurer of state upon award or order of the industrial board of Indiana.

*If an employee, who is entitled to compensation under the provisions of chapters 2 through 6 of this article, either:*

(a)  Exhausts the maximum benefits under IC 1971, 22-3-3-22, without having received the full amount of award granted to him under any of the provisions of IC 1971, 22-3-3-10 or

(b)  Exhausts his benefits under IC 1971, 22-3-3-10 then in such event, such employee may apply to the Industrial Board, who may award him compensation from the second injury fund established by this section, . . ." (Emphasis added)

In the case of a prior award by the Industrial Board, a change or modification may be made either upon hearing or by agreement upon filing a Form #14 Application for Modification or Change of Award in accordance with provisions of IC 1971, 22-3-3-27 (Burns Code Ed.) :

"Change or modification of award—Limitation.—The power and jurisdiction of the industrial board over each case shall be continuing and from time to time, it may, upon its own motion or upon the application of either party, on account of a change in conditions, make such modification or change in the award, ending, lessening, continuing or extending the payments previously awarded, either by agreement or upon hearing, as it may deem just, subject to the maximum and minimum provided for in this act [22-3-2-1—22-3-6-3].

Upon making any such change, the board shall immediately send to each of the parties a copy of the modified award. No such modification shall affect the previous award as to any money paid thereunder.

*The board shall not make any such modification upon its own motion, nor shall any application therefor be filed by either party after the expiration of two [2] years from the last day for which compensation was paid under the original award made either by agreement or upon hearing,* except that applications for increased permanent partial impair-

ment are barred unless filed within one [1] year from the last day for which compensation was paid. The Board may at any time correct any clerical error in any finding or award." (Emphasis added)

Here, the two-year period for a change or modification of the original award relating to the 1962 back injury had expired.

Burton has not established that he was entitled to, received, or exhausted the benefits available pursuant to Section 31(b) (3) (1971, 22-3-3-10(b)(3)) of the Indiana Workmen's Compensation Act. Thus, the Indiana Industrial Board was precluded from making an award from the Second Injury Fund.

The decision of the Full Industrial Board is therefore affirmed.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 360 N.E.2d 36.