James **KOHLMEYER**, Appellant–
Plaintiff,

v.

**SECOND INJURY FUND,**
Appellee–Defendant.

No. 93A02–0711–EX–1000.

Court of Appeals of Indiana.

June 10, 2008.

Rehearing Denied July 31, 2008.

Donald R. Wright, Rudolph Fine Porter & Johnson, LLP, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

James Kohlmeyer appeals the Indiana Worker's Compensation Board's (the Board's) denial of Kohlmeyer's petition for payment of benefits from Indiana's Second Injury Fund. The following issue is dispositive of the appeal: Do Social Security disability benefits count toward the threshold amount of benefits that must be received in order to become eligible for benefits from the Second Injury Fund?

We affirm.

The facts are undisputed. Kohlmeyer was injured on October 27, 1996 while in the scope and course of his employment with H.B. Zachry Company. On October 19, 1998, Kohlmeyer filed an application for Worker's Compensation benefits. On March 26, 2001, the parties filed a Stipulation For Award And Release Of Future Medical Benefits. We reproduce the relevant portions of that stipulation here:

1. The Worker's Compensation Board of Indiana ("the Board") has jurisdiction of this claim and may take such further action as is necessary to carry out the provisions of this Stipulation for Award and Release of Future Medical Benefits at the Indianapolis offices of the Board without further notice to the parties hereto, which notice is hereby waived by the parties.

2. On **October 27, 1996,** the Plaintiff was employed by the Defendant at an average weekly wage of Four Hundred Sixty–Four Dollars ($464.00).

3. On **October 27, 1996,** Plaintiff was injured by reason of an accident arising out of and in the course of his employment with Defendant.

4. Thereafter, the parties executed an Agreement to Compensation of Employee and Employer which was approved by the Board, and the Defendant paid to the Plaintiff temporary total disability benefits, until terminated in accordance with the Indiana Worker's Compensation Act and provided statutory medical and hospital services for care and treatment of plaintiff's injuries.

5. The Plaintiff filed an Application for Adjustment of Claim in **October, 1998.**

6. Although there exists a dispute between the parties as to the Plaintiff's right to recover benefits for alleged permanent total disability and alleged future medical benefits, **the parties stipulate that Plaintiff is permanently totally disabled** as a result of said work related injuries. The parties continue to have a dispute over the defendant's responsibility for future medical expenses.

7. By reason of this dispute between Plaintiff and Defendant and with knowledge of the uncertainty and expense of litigation of this claim and knowing that the plaintiff has access to Medicaid/Medicare and private insurance for future medical expenses, the parties seek to resolve their differences and are willing to give up any rights they may have in the future in connection with this claim under the provisions of the Indiana Worker's Compensation Act.

8. The parties have agreed that Plaintiff's claims for worker's compensation disability benefits in coordination with social security benefits are hereby

satisfied, and future medical expenses are hereby settled, for the combined lump sum payment of **Eighty–Five Thousand Dollars ($85,000.00)** ....

\* \* \* \* \* \*

11. The parties stipulate and agree that payments to the plaintiff are for permanent total disability, pursuant to the Indiana Worker's Compensation Act, and that at the conclusion of five hundred (500) weeks from the date of the injury plaintiff shall be eligible to petition the Worker's Compensation Board of Indiana for second injury funds. The plaintiff acknowledges that the Board shall determine his eligibility for second injury fund benefits at such time as he may make an application for benefits for the second injury fund.

12. Plaintiff acknowledges that he has read this agreement, that he has had an opportunity to have it reviewed by an attorney, that he understands that this agreement represents payment of his disability benefits and a full and final settlement of all of his claims with respect to his injury for medical expenses, even in the event that his medical condition, permanent partial impairment or ability to work should change and become worse in the future, **reserving only plaintiff's right to apply for additional compensation from the Second Injury Fund.**

*Appellant's Appendix* at 6–9 (emphasis in original). The Board approved the stipulation.

Pursuant to Social Security law, *see* 42 U.S.C. § 24a(5), Kohlmeyer's combined monthly benefit from Worker's Compensation and Social Security disability benefits was capped, in his particular case, at approximately $1600.00. This appeal ultimately arose because the sum of the maximum attainable benefits from those two sources exceeded $1600.00. Thus, Kohl-

meyer was required to allocate the maximum allowable amount between the two sources. For reasons not important here, Kohlmeyer elected to receive the maximum allowable amount from Social Security, with the remainder up to the $1600.00 limit coming from Worker's Compensation. It is undisputed that during the relevant time period, which consisted of the 500-week, Worker's Compensation eligibility period, Kohlmeyer received $136,381.82 in Worker's Compensation payments and $29,023.61 in Social Security disability benefits. At the end of that period, Kohlmeyer was no longer eligible for Worker's Compensation benefits. Therefore, on May 22, 2006, he filed an application for Second Injury Fund benefits.

At a hearing before a single hearing member, it was established that Kohlmeyer had indeed received a total of $136,381.82 in Worker's Compensation benefits and $29,023.61 in Social Security disability benefits. In order to become eligible for Second Injury Fund benefits, an applicant is required to "exhaust[ ] the employee's benefits under section 10 of this chapter[.]" Ind.Code Ann. § 22–3–3–13(h)(2) (West, PREMISE through 2007 1st Regular Sess.). In Kohlmeyer's case, the threshold amount under I.C. § 22–3–3–13(h)(2) was $154,665.00. Clearly, the Worker's Compensation benefits he received did not by themselves satisfy that requirement. He claimed, however, that the amount he received in Social Security disability benefits should also count toward the threshold. If that were the case, he received $165,405.43, thus satisfying I.C. § 22–3–3–13(h)(2). The single hearing member determined that only the Worker's Compensation benefits count toward that requirement and therefore concluded Kohlmeyer "ha[d] not exhausted the maximum benefits as defined in Indiana Code 22–3–3–13(h), a pre-condition to entry into

the Second Injury Fund." *Appellant's Appendix* at 19. Kohlmeyer appealed to the Board, which affirmed the decision of the single hearing member. Kohlmeyer appeals the Board's decision.[1]

■ The Worker's Compensation Act (the Act) provides "compensation for personal injury or death by accident arising out of and in the course of employment." I.C. § 22-3-2-2. The Act should be liberally construed to effectuate its humane purposes and therefore should be construed in favor of employees and beneficiaries. *Bowles v. Griffin Indus.*, 855 N.E.2d 315 (Ind.Ct.App.2006), *trans. denied.* Because the facts are undisputed and this appeal involves a pure question of law, we employ a de novo standard of review. *Prentoski v. Five Star Painting, Inc.*, 827 N.E.2d 98 (Ind.Ct.App.2005), *adopted in part and aff'd in part,* 837 N.E.2d 972 (Ind.2005).

■ The Second Injury Fund is codified at I.C. § 22-3-3-13. "One of the purposes of the Second Injury Fund is to provide monetary benefits to employees who are permanently and totally disabled and have received the maximum compensation they are entitled to under the [Act]." *Bowles v. Second Injury Fund,* 827 N.E.2d 142, 147–48 (Ind.Ct.App.2005), *trans. denied.* The relevant subsections of the Second Injury Fund statute provide:

> (h) If an employee who is entitled to compensation under IC 22-3-3-2 through IC 22-3-3-6 either:
>
> > (1) exhausts the maximum benefits under section 22 of this chapter without having received the full amount of award granted to the employee under section 10 of this chapter; or

> (2) exhausts the employee's benefits under section 10 of this chapter;
>
> then such employee may apply to the [B]oard, who may award the employee compensation from the second injury fund established by this section, as follows under subsection (i).
>
> (i) An employee who has exhausted the employee's maximum benefits under section 10 of this chapter may be awarded additional compensation equal to sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage at the time of the employee's injury, not to exceed the maximum then applicable under section 22 of this chapter, for a period of [sic] not to exceed one hundred fifty (150) weeks upon competent evidence sufficient to establish:
>
> > (1) that the employee is totally and permanently disabled from causes and conditions of which there are or have been objective conditions and symptoms proven that are not within the physical or mental control of the employee; and
> >
> > (2) that the employee is unable to support the employee in any gainful employment, not associated with rehabilitative or vocational therapy.

I.C. § 22-3-3-13. The petitioner bears the burden to prove that he or she is entitled to compensation from the Second Injury Fund. *Burton v. Gen. Motors Corp.,* 172 Ind.App. 263, 360 N.E.2d 36 (1977).

As indicated previously, the question in the instant case concerns the requirement in I.C. § 22-3-3-13 to exhaust the employee's maximum Worker's Compensation benefits in order to become eligible to receive benefits from the Second Injury Fund. Put simply, based solely upon the

---

1. Oral argument in this cause was conducted in Indianapolis on May 8, 2008. We commend counsel for both Kohlmeyer and the Second Injury Fund for their helpful briefs and excellent argument.

Worker's Compensation payments, Kohlmeyer did not meet that threshold. If the Social Security Disability benefits count toward the threshold, however, Kohlmeyer satisfied that requirement. The question is, do Social Security benefits constitute "benefits" within the meaning of I.C. § 22–3–3–13(h) and (i)? This is a question of first impression in Indiana.

Primarily, Kohlmeyer contends that Social Security benefits count toward the threshold because of the use of the different terms "benefits" and "compensation" in the Act. In a nutshell, he notes that the Act provides that he is entitled to "compensation" after he exhausts his "benefits." I.C. § 22–3–3–13(h). He posits that those terms are not interchangeable, but instead separate terms were used to convey discrete, separate meanings. He reasons that because the Act specifies that he is entitled to "compensation" from the fund, that term must refer to Worker's Compensation funds. He claims that "benefits", on the other hand, is a different, more general term that refers to more than just Worker's Compensation funds, and includes funds such as Social Security disability benefits. Although this argument is not entirely implausible, in order to accept it we must ignore far more compelling contextual evidence to the contrary.

 We note at the outset that the terms "compensation" and "benefits" are not defined in the Act. Therefore, we are called upon to determine their meaning in this context.

"If a statute is unambiguous, we may not interpret it but must give the statute its clear and plain meaning; if a statute is ambiguous, we must ascertain the legislature's intent and interpret the statute to effectuate that intent. *Robinson v. Gazvoda*, 783 N.E.2d 1245, 1249–50 (Ind.Ct.App.2003), *trans. denied*. 'A statute is ambiguous if it is susceptible

to more than one reasonable and intelligible interpretation.' *Id.* at 1250. If interpretation is necessary, the express language of the statute controls and the rules of statutory construction apply. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003). We are required to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. *Id.* 'In so doing, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation.' *Id.* The legislative intent governing the provision as a whole prevails over the strict literal meaning of any word or term. *Id.*"

*Carter v. Carolina Tobacco Co., Inc.*, 873 N.E.2d 611, 625–26 (Ind.Ct.App.2007) (quoting *Med. Assurance of Ind. v. McCarty*, 808 N.E.2d 737, 741 (Ind.Ct.App. 2004)). Moreover, when determining the plain and ordinary meaning of a statutory term, we may consider the relationship of the term with other words and phrases in the materials under consideration. *Carter v. Carolina Tobacco Co., Inc.*, 873 N.E.2d 611. Because a word's meaning can change depending upon context, we must also consider the context in which the word is used. *Id.*

The humanitarian purpose of the entire Act is "to provide injured workers with an expeditious and adequate remedy." *Walker v. State, Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 266 (Ind.1998). With specific respect to the Second Injury Fund, one of its primary purposes is to provide monetary benefits to employees who are permanently and totally disabled and have received the maximum compensation to which they are entitled under the Act. *Bowles v. Second Injury Fund*, 827 N.E.2d 142. Mindful of these goals, we

observe first and foremost that I.C. § 22–3–3–13(h) governs exclusively Worker's Compensation benefits, and does not mention Social Security benefits. In fact, Social Security benefits are not mentioned elsewhere in the relevant portions of the Act, i.e., Chapters 2–6, although the term "benefits" is. Indeed, it appears that the strongest argument for including Social Security payments in the definition of "benefits" is that the Act does not specifically *exclude* that meaning.

Juxtaposed against this relatively weak inferential "evidence" is the fact that the term "benefits" is used in other places in the Act where it unmistakably refers to Worker's Compensation payments. Specifically, I.C. § 22–3–4–12.1(a) states: "The worker's compensation board, upon hearing a claim for benefits...." Similarly, I.C. § 22–3–4–12.1(f) states: "An award or awards to a claimant pursuant to subsection (b) shall not total more than twenty thousand dollars ($20,000) during the life of the claim for benefits arising from an accidental injury." Finally, I.C. § 22–3–3–32 states:

> The provisions of [the Act] may not be construed to result in an award of benefits in which the number of weeks paid and to be paid for temporary total disability, temporary partial disability, or permanent total disability combined exceeds five hundred (500) weeks. This section shall not be construed to prevent a person who is permanently totally disabled from applying for an award under I.C. § 22–3–3–13 [the Second Injury Fund statute].

Again, "benefits" as used in these provisions clearly refers to Worker's Compensation payments.

■ Viewed as a whole, we think it clear that the terms "compensation" and "benefits" as used in I.C. § 22–3–3–13(h) are synonymous, at least with respect to

the issue under consideration. Further, inasmuch as they are used in the Worker's Compensation statute, and that statute does not address the subject of Social Security benefits or even mention any other aspect of Social Security, we conclude that both "benefits" and "compensation" as used in subsection (h) refer to Worker's Compensation payments. In the final analysis, we reject Kohlmeyer's plausible but unpersuasive claim that "benefits" is to be understood as referring to any funds a claimant receives, without respect to the source from which they came. We conclude instead that the best interpretation of the Act is that it addresses only Worker's Compensation benefits and compensation. In so doing, we necessarily reject Kohlmeyer's claim that the Act neglects to mention Social Security benefits because the statute was written long ago and no one made this argument before. We are confident that if the General Assembly had intended to include benefits from other sources in calculating or limiting the amount of Worker's Compensation benefits an applicant may receive, it could easily have done so.

Finally, we will briefly address an argument made by Kohlmeyer to the same end, i.e., that he is entitled to payments from the Second Injury Fund. Those arguments are based upon the effect of the Stipulation signed by the parties and approved by the Board. According to Kohlmeyer, the parties stipulated in that agreement that he is entitled to benefits from the Second Injury Fund. Therefore, he claims he is eligible for the Second Injury Fund regardless of whether he meets the statutory criteria. Even assuming for the sake of argument that Kohlmeyer is correct with respect to the first stipulation (i.e., permanent disability), it is of no importance because he is not correct about the second (i.e., the par-

ties agreed he is eligible for Second Injury Fund compensation).

 In Paragraphs 12 and 13 of the Stipulation, Kohlmeyer agreed that he was waiving various rights, "reserving only Plaintiff's right to apply for additional compensation from the Second Injury Fund." *Appellant's Appendix* at 9. Preserved thereby was the right "to apply", *id.,* not the right to receive. In fact, elsewhere in the Stipulation Kohlmeyer acknowledged, "the Board shall determine his eligibility for second injury fund benefits at such time as he may make an application for benefits for the second injury fund." *Id.* at 9. Clearly, the best interpretation of these provisions is that Kohlmeyer reserved only the right *to apply* for Second Injury Fund benefits, but agreed that the Board would ultimately decide whether he was eligible. When Kohlmeyer eventually applied for Second Injury Fund benefits, the Board determined he was not eligible because he had not met the threshold requirement set out in subsection (h), and correctly so.[2]

 In summary, we conclude that the threshold requirement regarding benefits received, as set out in I.C. § 22–3–3–13(h)(2), must be met by considering only Worker's Compensation benefits. The arguments to the contrary made on behalf of Kohlmeyer are not without merit. They are, however, arguments more properly addressed to the General Assembly, inasmuch as they constitute appeals to modify the statute to include benefits from other sources in reaching the threshold. As it

currently exists, the statute permits no such interpretation. We also conclude that the Stipulation signed by Kohlmeyer and H.B. Zachry Company and approved by the Board did not include a guarantee that Kohlmeyer would be eligible for Second Injury Fund benefits. Accordingly, the decision of the Board is affirmed.

Judgment affirmed.

ROBB, J., and MATHIAS, J., concur.

---

**2.** Another issue presented in this appeal and addressed at some length at oral argument is the question of whether the Board is bound by the terms of the Stipulation. This question is rendered moot because the Stipulation does not, by its terms, include a guarantee that Kohlmeyer will be eligible for benefits from the Second Injury Fund. As explained above, it guaranteed only that Kohlmeyer could *ap-*

*ply* for such benefits. Had the Stipulation contained a term to the effect that Kohlmeyer would *be eligible* for benefits from the Second Injury Fund, and had the Board approved that stipulation, then the Board would have been bound thereby and Kohlmeyer would have been eligible on that basis. Such was not the case, however.