ATTORNEY FOR APPELLANT
Randal M. Klezmer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**

Jun 24 2008, 1:40 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

No. 93S02-0802-EX-0107

RONALD MAYES,

*Appellant (Plaintiff Below),*

v.

SECOND INJURY FUND,

*Appellee (Defendant Below).*

_____

Appeal from the Indiana Worker's Compensation Board, Application No. C-152300
The Honorable Linda P. Hamilton, Chairman

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 93A02-0702-EX-162

_____

**June 24, 2008**

**Shepard, Chief Justice.**

This case presents a question of first impression in Worker's Compensation: whether third party settlement terminates Second Injury Fund liability. We conclude that the statutory scheme makes Second Injury Fund liability a derivative of employer liability, and, accordingly, where settlement terminates an employer's liability, Second Injury Fund liability will also be terminated.

**Facts and Procedural History**

In November 1999, Ronald Mayes was injured in a workplace accident arising out of and in the course of his employment with Main Tech Corporation when his arms were pulled into a conveyor belt he was cleaning. Mayes instituted a third party lawsuit against Federal Express Corporation and two other defendants (collectively "Fed Ex") that Mayes believed were liable for his injuries. This lawsuit resulted in a confidential settlement.

Mayes and Main Tech thereafter submitted to the Indiana Worker's Compensation Board a document titled "Agreed Statement of Facts," which reflected that Mayes and Fed Ex settled the third party case for an undisclosed amount of money and that as a condition of the settlement Main Tech would continue paying Mayes all statutory worker's compensation benefits. A member of the Board issued a signed document stating that "[t]he foregoing Agreed Statement of Facts is HEREBY APPROVED and made a part of the record." (App. at 22.)

Main Tech's worker's compensation insurance carrier, Reliance Insurance Company, furnished Mayes with medical and temporary total disability benefits until Reliance became insolvent. Following Reliance's bankruptcy, the Indiana Guaranty Fund provided Mayes with medical and temporary total disability benefits until it reached the maximum $100,000 in benefits payable by the Indiana Guaranty Fund. Main Tech then began providing Mayes with medical and temporary total disability benefits until October 2004 when Main Tech filed bankruptcy.

In November 2004, Mayes filed a petition for entry into the Second Injury Fund, and in April 2006, he filed a submission in support of his petition. A single hearing member issued a decision denying Mayes' claim, stating that

> although [Mayes] is deemed to be permanently and totally disabled and has exhausted his maximum benefit under I.C. 22-3-3-13(g), he is still barred from entry into the Second Injury Fund because of his acceptance of a third party settlement with Federal Express Corporation in 2000. This settlement . . . would have alleviated [Main Tech] from paying any further compensation and therefore alleviates the Second Injury Fund. The fact that [Main Tech] voluntarily agreed

2

to continue paying [Mayes] is outside the purview of the Indiana Worker's Compensation Act.

(Id. at 7.)

Mayes then applied for review by the full board. After a hearing, the full board approved the single hearing member's decision by a vote of 4-3. The Court of Appeals affirmed the board, holding that the Second Injury Fund is not available to compensate an employee where an employee previously settled his claim with a third party, that employees maintain the burden of proof to show that compensation from the Second Injury Fund would not result in double recovery, and that Mayes failed to fulfill this burden. Mayes v. Second Injury Fund, 873 N.E.2d 136 (Ind. Ct. App. 2007), vacated. We granted transfer.

## I.      Overview of Indiana's Second Injury Fund

Indiana's Second Injury Fund was originally created in 1949[1] to deal with successive permanent injuries, such as when an employee suffers a permanent injury in the form of an amputation or loss of use of an extremity or an eye and, while continuing to work on such handicap, suffers a second injury of the same nature, resulting in statutory permanent impairment. See Ind. Code Ann. § 22-3-3-13(b) (West 2007).

> Because the combined effect of the two injuries [is] greater than for the second injury alone, a second employer might be discouraged from hiring a previously-injured employee. So, the Second Injury Fund was established to ensure that the injured employee received full compensation, while the second employer paid only for the injury occurring in its employ. . . .   If the elements of the statute are met, the employer is required to pay compensation for the second permanent injury, as if the first permanent injury had not occurred. When all payments for that specific harm have been made, the employee is then entitled to Second Injury Fund payments for the total permanent impairment that results from the two successive losses . . . .

---

[1] The SIF's statutory roots date back to 1929, though the 1929 Act bears little resemblance to the modern version. The term "Second Injury Fund" was not introduced in the Indiana statute until the Act of 1949. Although the statute has been expanded since 1949, many of the provisions enacted in 1949 are still present in the statute today.

Robert A. Fanning, Worker's Compensation Handbook: A Comprehensive Guide to Worker's Compensation in Indiana 48-49 (5th ed. 2006). See Ind. Code Ann. § 22-3-3-13(b), (i).

The fund has another important purpose, the one implicated in this case. An injured employee may seek compensation if the maximum payments allowable for a single injury have been received but the employee remains permanently disabled. Ind. Code Ann. § 22-3-3-13(h). The burden is on the petitioner to prove that he is entitled to compensation from the Second Injury Fund. Burton v. Gen. Motors Corp., 172 Ind. App. 263, 360 N.E.2d 36 (Ind. Ct. App. 1977).

**II.     Interplay Between Third Party Settlement and Second Injury Fund Liability**

Few states have addressed the question of whether third party settlement terminates Second Injury Fund liability, and the jurisdictions that have done so are split.

Some courts have held that the Second Injury Fund's liability is a "derivative" of the employer's liability and that, therefore, third party settlements preclude Second Injury Fund eligibility. See, e.g., Arduser v. Daniel Int'l Corp., 640 P.2d 329 (Kan. Ct. App. 1982) (because Second Injury Fund liability is purely derivative, an injured employee's settlement with his employer precluded the claimant from any further action against the Fund); White v. Weinberger Builders, Inc., 212 N.W.2d 307 (Mich. Ct. App. 1973) (because Second Injury Fund liability is derivative, "the fund cannot be subjected to a separate, independent hearing as to liability . . . once the employer's alleged prospective liability has been redeemed via a negotiated settlement"). Other courts have concluded that third party settlement does not impact Second Injury Fund eligibility because Second Injury Fund liability and employer liability are "coexistent." See, e.g., Romero v. Cotton Butane Co., Inc., 728 P.2d 483 (N.M. Ct. App. 1986) (Second Injury Fund liability is coexistent with, rather than derivative from, the liability of the employer and its carrier, and that coexistent liability may be addressed separately in settlement).

4

In determining whether Second Injury Fund liability is derivative or coexistent with employer liability, the central legislative enactment is Ind. Code § 22-3-2-13, which provides:

> Whenever an injury . . . for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in some other person than the employer . . . a legal liability to pay damages in respect thereto, the injured employee . . . may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article.  In that case, however, if the action against the other person is brought by the injured employee . . . and . . . settlement is made with the other person, . . . the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate . . . .

Ind. Code Ann. § 22-3-2-13.

Mayes argues that although his third party settlement may have alleviated his employer and its worker's compensation insurance carrier from liability, it did not alleviate the Second Injury Fund from liability because the text of the statute only says that "the liability of an employer or an employer's worker's compensation insurance carrier" terminates upon settlement, with no mention of Second Injury Fund liability.  (Appellant's Br. at 8.)  Conversely, the Second Injury Fund argues that its liability is terminated by third party settlement because the text of the statute provides that the section applies to compensation which is "payable under chapters 2 through 6 of this article," and chapter 3 pertains to Second Injury Fund compensation. (Appellee's Br. at 5.)  This leads to examination of legislative intent.

The best evidence of legislative intent is surely the language of the statute itself, and courts strive to give the words in a statute their plain and ordinary meaning.  A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words.  Sales v. State, 723 N.E.2d 416 (Ind. 2000).  The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.  B.K.C. v. State, 781 N.E.2d 1157 (Ind. Ct. App. 2003).

5

The primary purpose of the General Assembly in creating the Second Injury Fund was to encourage the hiring of injured persons. This encouragement lies in requiring the Second Injury Fund to relieve the employer of certain liabilities that, but for the Second Injury Fund, would be chargeable to him. This inducement to hire goes to the employer, but it ultimately benefits injured employees through better job opportunities.

This underlying purpose, and the legislature's decision to make explicit reference to Second Injury benefits in its enactment on termination after third-party settlement, lead us to conclude that the General Assembly intended that the Second Injury Fund's liability be derivative of the employer's liability. The Second Injury Fund is not an employer and is not the responsible party for employees' injuries. Rather, the Fund helps mitigate employer liability. Holding the Second Injury Fund liable when the employer is not liable would be inconsistent with the Fund's purpose. This derivative role will often be to the advantage of claimants who will typically be spared the financing and delay of two trials, one with the employer/carrier and the other with the Fund, before receiving the full benefits under the act. Accordingly, when an employee terminates his employer's liability by settling his claim, the employee also terminates the Second Injury Fund's liability.

The apparent policy of Ind. Code § 22-3-2-13 is to bar any worker's compensation, regardless of who is required to pay it, in the event that the employee recovers from a third party tortfeasor as much or more than the total amount of compensation recoverable. Where settlement with an employer terminates eligibility to receive worker's compensation benefits, we see no reason why the General Assembly would have excepted the Second Injury Fund from that termination of liability.

### III.     Effect of Board Approval of Voluntary Continuation

In the agreement between Mayes and Main Tech, Main Tech voluntarily agreed to continue paying worker's compensation benefits, despite Mayes' third party settlement. The

6

parties submitted their agreement to the Board in a document styled as an "Agreed Statement of Facts."

Unlike most third party settlements, which terminate employer liability, the settlement between Mayes and Fed Ex did not relieve Main Tech or Main Tech's worker's compensation insurance carrier of liability for worker's compensation benefits. Rather, Main Tech voluntarily maintained its liability despite that it would have otherwise statutorily terminated. The parties presented this agreement to the Board, and the Board approved it, thereby approving this continuation of liability. While there is a plausible dispute about whether the Board's action constituted an approval, we conclude that its action should be treated as such in light of the fact that the worker's compensation scheme is designed for the benefit of employees, a benefit to be liberally construed. Hoffman v. Brooks Constr. Co., 220 Ind. 150, 41 N.E.2d 613 (1942).[2]

As explained above, the Second Injury Fund's liability is derivative of the employer's liability. If the Board approves an agreement continuing an employer's liability despite third party settlement, it follows that the Second Injury Fund should also remain liable.

If Mayes and Main Tech had not sought approval by the Board, then the fact that Main Tech voluntarily agreed to continue paying benefits to Mayes would have been outside the purview of the Indiana Worker's Compensation Act. In that scenario, the agreement would not have involved the worker's compensation system and instead would have merely been a private agreement between two parties. An employer acting outside the purview of the worker's compensation system does not have the unilateral authority to bind the Second Injury Fund to an

---

[2] The text of the document at issue makes it clear that the parties were not only submitting facts into the record but were also seeking the Board's approval of their agreement. The agreement is mentioned in detail in the document, and above the parties' signature lines are the words

> IT IS FURTHER AGREED AND ACKNOWLEDGED that the Worker's Compensation Board of Indiana shall retain jurisdiction to implement the agreements set forth in this Agreed Statement of Facts. This agreement is made by the parties subject to the approval of the Worker's Compensation Board this 17 day of Nov. 2003.

(Appellant's App. at 21.) Furthermore, the document issued by the Board in response to the parties' submission says that "[t]he foregoing Agreed Statement of Facts is HEREBY APPROVED and made a part of the record." (Id. at 22 (emphasis in original).) This language coupled with the circumstances in this case would lead a reasonable person to believe that the Board approved this agreement.

agreement to assume liability where liability would otherwise terminate by statute, but in this case the parties' agreement was part of the worker's compensation process, as evidenced by the fact that they submitted it to the Board and obtained Board approval.

If the Board opines that a third party settlement should relieve the Second Injury Fund of liability, it has the authority to refuse to approve an agreement in which an employer maintains liability despite a third party settlement unless the parties stipulate in their agreement that the Second Injury Fund is released. That did not occur here.

Neither party contests that Mayes met all the other requirements for Second Injury Fund eligibility. Accordingly, Mayes' third party settlement did not terminate the Second Injury Fund's liability.

The terms of Mayes' "confidential settlement" with Fed Ex are not included in the record. The Board argues that Mayes is not entitled to benefits from the Second Injury Fund because of the risk of double recovery this nondisclosure presents.

Whereas the Board is correct in concluding that a risk of double recovery exists, the Board should have evaluated this risk before approving the agreement between Mayes and Main Tech and insisted that the settlement amount received from Fed Ex be disclosed prior to giving its approval for a continuation of benefits. The Board has the right to withhold approval of agreements involving confidential settlements. If disclosure violates the terms of a settlement between an employee and a third party, then the employee will have to choose whether to accept a confidential settlement with a third party or to pursue worker's compensation benefits.

Accordingly, because the Board approved the agreement between Mayes and Main Tech, the Second Injury Fund has waived the right to now claim that the risk of double recovery should prohibit Second Injury Fund liability. In the future, if the Board is concerned about double recovery, it should refuse approval of agreements involving confidential settlements or insist that the agreement contain a provision releasing the Second Injury Fund from liability.

8

**Conclusion**

For the above reasons, we reverse the Board's decision.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.