Scott JONES, Appellant–Plaintiff,

v.

**INDIANA FARMERS MUTUAL INSURANCE COMPANY, and Crawford Custom Homes, Appellees–Defendants.**

No. 93A02–0908–EX–812.

Court of Appeals of Indiana.

May 5, 2010.

---

Paul A. Brizendine, Brizendine Law Office, LLC, Floyds Knobs, IN, Attorney for Appellant.

Mark R. Smith, Smith Fisher Maas & Howard, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Scott Jones appeals from an order of the Indiana Worker's Compensation Board ("Board") concluding that Indiana Farmers Mutual Insurance Company ("Indiana Farmers") did not provide coverage when Jones was injured because Indiana Farmers had cancelled its insurance policy. Jones raises two issues, which we consolidate and restate as whether the Board correctly interpreted Ind.Code § 22–3–5–5(c)(5) of the Worker's Compensation Act. We affirm.

The relevant facts follow. On or about June 3, 2005, Indiana Farmers issued its Workers Compensation and Employers Liability Policy No. 001–024–007545 (the "Policy") to Crawford Custom Homes, Inc. ("CCHI") as the named insured, with effective dates of coverage between June 3, 2005, and June 3, 2006. The Policy contained the following provision:

[Indiana Farmers] may cancel this policy. [Indiana Farmers] must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

Appellee's Appendix at 34.

On or about August 5, 2005, Indiana Farmers mailed CCHI a premium invoice for $607.50 which indicated that the premium payment must be received by September 3, 2005. CCHI did not pay the premium by September 3, 2005. On September 6, 2005, Indiana Farmers mailed to CCHI a cancellation notice which indicated that unless the premium payment was received by September 13, 2005, the Policy "would cancel" on September 13, 2005. *Id.* at 45. CCHI did not pay the premium by September 13, 2005. On September 13, 2005, Indiana Farmers mailed to CCHI a final cancellation notice confirming that the Policy had been cancelled at 12:01 AM Standard Time on September 13, 2005, for non-payment of premium. On either September 19, 2005 or September 22, 2005, the Board received notice from Indiana Farmers that the Policy had been cancelled.[1]

On November 7, 2005, Jones was working at a residential home construction site for CCHI in Floyd County, Indiana, when he slipped and fell off of the roof, landing on a concrete slab, and allegedly injured his left knee and both upper extremities. On or about November 7, 2005, Jones filed an application for adjustment of claim. On December 9, 2005, Jones filed an application for adjustment of claim requesting a hearing.

---

1. Jones concedes in his brief that the Board received notice on September 19, 2005. Indiana Farmers states that the Board received notice on September 22, 2005. Whether the Board received notice on September 19, 2005 or September 22, 2005, does not affect the outcome of this case.

Upon receipt of Jones's application, CCHI requested that Indiana Farmers defend/indemnify it under the Policy against the claim. Indiana Farmers defended CCHI against the claim pursuant to a written reservation of rights under the Policy.

On November 13, 2006, Indiana Farmers filed a complaint for declaratory judgment in the Floyd Circuit Court requesting in part that the court "declare that Indiana Farmers has no duty under the Policy to defend CCHI against the Work Comp Claim," and that "Indiana Farmers has no duty under the Policy to indemnify CCHI against the Work Comp Claim." *Id.* at 47.

On December 31, 2007, Jones filed a motion to join Indiana Farmers as a party defendant, which the Single Hearing Member later granted. On May 15, 2009, the parties filed their Joint Stipulations for Bifurcated Hearing, which presented the following issues to be decided: (1) "[w]hether the Indiana Worker's Compensation Board has exclusive jurisdiction to decide insurance coverage disputes in cases involving alleged work-related injuries;" and (2) "[w]hether [Indiana Farmers'] termination by cancellation if [sic] its Worker's Compensation insurance policy covering the employees of [CCHI] is effective as to employees of the insured covered thereby." Appellant's Appendix at 60.

After a hearing, the Single Hearing Member concluded that Indiana Farmers did not insure Jones on the date of his accident. Specifically, the order of the Single Hearing Member stated:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Ind.Code 22–3–5–5(c)(5) reads as follows:

Any termination of this policy by cancellation shall not be effective as to employees of the insured covered hereby unless at least ten (10) days prior to the taking effect of such cancellation, a written notice giving the date upon which such termination is to become effective has been received by the Worker's Compensation Board of Indiana at its office in Indianapolis, Indiana.

This statute is intended to protect workers and employers by requiring advanced notice to the employer that its policy is going to be cancelled. This allows the employer time to secure alternate coverage and gives the Worker's Compensation Board the opportunity to insure that the employer complies with the provisions of the Act.

2. [Indiana Farmers'] notice of cancellation issued on September 15, 2005 did not cancel the employer's policy as of September 13, 2005, as it purported to do.

3. However, the cancellation of the policy was effective ten (10) days after the Board received notice of the cancellation, on October 2, 2005.

4. Therefore, there was no coverage for [Jones's] accident on November 7, 2005 by Indiana Farmers.

5. The purpose of the statute is effectuated by running the cancellation ten (10) days from the date that the Board receives the notice because it allows the employer time to secure coverage and allows the Board an opportunity to insure that the employer purchases replacement coverage.

6. Furthermore, the hearing member finds the rationale in *American Standard v. Rogers,* 788 N.E.2d 873 (Ind. App.2003) and *Krueger v. Hogan,* 780 N.E.2d 1199 (Ind.App.2003) persua-

sive in that the court found that even though the insurance carrier did not comply with a similar notice requirement, that requiring strict compliance with the statute would not fulfill the intent of the legislature or the purpose of the statute since the insured had ample time to extend coverage or procure another policy (twenty-two days and forty-seven days respectively) before the date of accident for which coverage was disputed.

7. Similarly, in the instant case the employer had ample time to secure or extend coverage for its employees after the notice was sent and received by the Board.

8. Although Indiana Farmers is not liable for [Jones's] injuries, this does not necessarily mean that [Jones] is left without a remedy. [Jones's] employer is still responsible for [Jones's] damages if the accident is deemed compensable under the Indiana Worker's Compensation Act.

Appellant's Appendix at 6–7. On July 29, 2009, the Board, by a four to three decision, adopted the Single Hearing Member's decision.[2]

■■■ The issue is whether the Board correctly interpreted Ind.Code § 22–3–5–5(c)(5) of the Worker's Compensation Act (the "Act"). The Act provides compensation for personal injury or death by accident arising out of and in the course of employment. Ind.Code § 22–3–2–2. In evaluating the Board's decision, we employ a two-tiered standard of review. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind. Ct.App.2008), *trans. denied.* First, we review the record to determine if there is any competent evidence of probative value to support the Board's findings. *Id.* We then assess whether the findings are sufficient to support the decision. *Id.*

■■■ "As to the Board's interpretation of the law, an appellate court employs a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area." *Christopher R. Brown, D.D.S., Inc. v. Decatur County Memorial Hosp.*, 892 N.E.2d 642, 646 (Ind.2008). "An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000). "The Board will only be reversed if it incorrectly interpreted the [Act]." *Brown*, 892 N.E.2d at 646. However, the Act must be liberally construed to effectuate its humane purposes and doubts in the application of terms are to be resolved in favor of the employee. *Christopher R. Brown, D.D.S., Inc.*, 892 N.E.2d at 649 (citing *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1018 (Ind.1995)).

Jones argues that Indiana Farmers' notice of cancellation sent to the Board did not meet the requirements of Ind.Code § 22–3–5–5(c)(5) and that "the Board de-

**2.** The order of the Single Hearing Member stated that the "issue for determination by the Worker's Compensation Board of Indiana is ... [w]hether the Indiana Worker's Compensation Board has exclusive jurisdiction to decide coverage disputes in cases involving alleged work-related injuries." Appellant's Appendix at 4. The Board adopted the Single Hearing Member's decision "with the following clerical correction:"

The sole issue to be determined by the Board is whether [Indiana Farmers'] termination by cancellation if [sic] its Worker's Compensation insurance policy covering the employees of [CCHI], is effective as to employees of the insured covered thereby? The parties stipulated at hearing that the Board had jurisdiction to decide this issue. *Id.* at 8–9.

termined that strict compliance with I.C. § 22–3–5–5(c)(5) was not required and adopted a substantial compliance rationale by which it justified arbitrarily setting a new and different cancellation date for the [Policy]." Appellant's Brief at 9. Jones also argues that "[t]he Board cannot simply substitute its judgment for that of the legislature by dismissing the specific notice requirements and consequences inherent in the statute." *Id.*

This case requires us to interpret Ind.Code § 22–3–5–5(c)(5). When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele,* 766 N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin,* 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind. 2001).

If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin,* 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* The best evidence of legislative intent is the language of the statute itself, and courts strive to give the words in a statute their plain and ordinary meaning. *Mayes v. Second Injury Fund,* 888 N.E.2d 773, 776 (Ind.2008). A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Id.*

We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Ind.Code § 22–3–5–5(c) provides:

Every policy of any such company or association is deemed to include the following provisions and any change in the policy which may be required by any statute enacted after May 21, 1929, as fully as if they were written in the policy:

\* \* \* \* \* \*

(5) Any termination of this policy by cancellation shall not be effective as to employees of the insured covered hereby unless at least ten (10) days prior to the taking effect of such cancellation, a written notice giving the date upon which such termination is to become effective has been received by the worker's compensation board of Indiana at its office in Indianapolis, Indiana.

Jones appears to argue that Indiana Farmers did not meet the requirements of Ind.Code § 22–3–5–5(c)(5) because Indiana Farmers failed to file a written notice to the Board ten days prior to the taking effect of the cancellation of the Policy. Specifically, Jones argues that notice was not provided to the Board until "six (6) days **after** the [Policy] had been cancelled." Appellant's Brief at 8. Jones also argues that "[t]he record is void of any subsequent action to cure this deficiency on the part of Indiana Farmers either before or after Jones sustained a work-related injury on November 7, 2005." *Id.* Indiana Farmers argues that the Board's decision is "consistent with the statutory requirement of ten (10) days advance written notice to effectively cancel a worker's

compensation policy...." Appellee's Brief at 15. The Board concluded that "the purpose of the statute is effectuated by running the cancellation ten (10) days from the date that the Board receives the notice because it allows the employer time to secure coverage and allows the Board an opportunity to insure that the employer purchases replacement coverage." Appellant's Appendix at 6.

Examining the intent of the statute, we observe that the Indiana Supreme Court has held:

> The [Act] is a humane enactment designed and intended for the protection of workmen who come within its provisions, which are and ought to be liberally construed and applied, so as to extend that protection to the ultimate good of the greatest possible number of our workers; but the extent and limitation of its applicability also are fixed by those provisions and we cannot, by judicial pronouncement, enlarge these beyond the very obvious intent of the Legislature....

*Christopher R. Brown, D.D.S., Inc.*, 892 N.E.2d at 649 (quoting *McGill Mfg. Co. v. Dodd*, 116 Ind.App. 66, 59 N.E.2d 899, 901 (1945)). The Board concluded that Ind. Code § 22–3–5–5(c) is "intended to protect workers and employers by requiring advanced notice to the employer that its policy is going to be cancelled," and that "[t]his allows the employer time to secure alternate coverage and gives the [Board] the opportunity to insure that the employer complies with the provisions of the Act." Appellant's Appendix at 6.

This court has addressed a similar issue in the context of automobile liability insurance policies. In *Moore v. Vernon Fire & Cas. Ins. Co.*, 142 Ind.App. 334, 234 N.E.2d 661 (1968), *reh'g denied*, the insurance policy stated:

> This policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations at the address shown in the policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

142 Ind.App. at 336, 234 N.E.2d at 662. The insurer sent a notice of cancellation to the insured, which was mailed at 6:30 P.M., May 23, 1961, and indicated that the effective date of termination was 12:01 A.M., June 2, 1961. *Id.* On appeal, the insured argued that "since the effective date of cancellation as stated in the Notice of Cancellation was less than ten days from the mailing of the notice, the policy was not revoked but was in full force and effect at the time of the collision between appellant's decedent and appellee's alleged insured, June 8, 1961." *Id.* The insurer argued that the "notice, although not effective to cancel the policy at the stated time (12:01 A.M., June 2, 1961), nevertheless became effective to cancel the policy ten days after the mailing of such notice." *Id.*

The court stated that "[t]he precise question presented by the case at bar is one of first impression for the Indiana courts." *Id.* The court observed that the majority view is that the fact that the notice fixes a shorter period than that prescribed in the statute or policy does not invalidate it as a notice of cancellation to become effective at the expiration of the prescribed period. *Id.* at 336, 234 N.E.2d at 663. The court also stated:

> The three jurisdictions, Pennsylvania, Florida and South Carolina, which appear to endorse appellant's view, base their decisions upon the rather narrow rule of strict construction. It is the opinion of this court that to follow the rule of strict construction would be to

fail to observe the rationale behind the notice provision, which is to enable the insured to obtain insurance with some other company prior to the time when he is exposed to further risks without insurance protection.

*Id.* at 337–338, 234 N.E.2d at 663. The court observed that more than ten days had elapsed between the date that the notice of cancellation was sent to the insured and the date of the accident and concluded that the notice of cancellation, "while not strictly conforming to the dictates of the policy, was sufficient to apprise [the insured] of the [insurer's] intentions to cancel the policy and provided him with more than the required time as stipulated in the policy, in which to obtain other insurance." *Id.* at 338, 234 N.E.2d at 663.

More recently, this court has interpreted Ind.Code § 27–7–6–5, which governs the notice of cancellation of automobile insurance policies. Initially, we note that similar to the Worker's Compensation Act, which is to be liberally construed, courts have held that Indiana's uninsured/underinsured motorist statute should be liberally construed. *See State Farm Mut. Auto. Ins. Co. v. Steury,* 787 N.E.2d 465, 470 (Ind.Ct.App.2003) (interpreting Indiana's uninsured/underinsured motorist statute and holding that the Indiana Supreme Court has held that because of the remedial nature of this legislation, the statute is to be liberally construed) (citing *United Nat. Ins. Co. v. DePrizio,* 705 N.E.2d 455, 459–460 (Ind.1999)), *trans. dismissed.*

In *Krueger v. Hogan,* 780 N.E.2d 1199, 1200 (Ind.Ct.App.2003), John Hogan applied for automobile liability insurance coverage with Western Reserve Group Insurance ("Western Reserve"). Sometime prior to May 19, 2000, Hogan ceased making premium payments on the policy. 780 N.E.2d at 1200. The insurance contract provided that Western Reserve could cancel the policy upon the nonpayment of premiums, and further required that it would provide the insured with ten days' advance notice of the cancellation. *Id.*

In light of Hogan's nonpayment of the premiums, on May 19, 2000, Western Reserve mailed notification of its intent to cancel his policy within ten days to Hogan, if no minimum premium payment was received. *Id.* Notice of the cancellation was not provided to Hogan's insurance agent, Southwestern Insurance Agency ("Southwestern"), and there was no showing that the company waived receipt of that notice. *Id.* The notice sent to Hogan provided that cancellation of the policy would become effective on May 30, 2000. *Id.* Neither Hogan nor Southwestern ever paid the premium on the policy following this notice of cancellation on May 19, 2000. *Id.* Thus, Western Reserve mailed a notice of cancellation to Hogan on May 30, 2000. *Id.* Hogan's policy was, in fact, cancelled on that day, and neither he nor his agent made any attempt to reinstate his policy, or to pay any of the past due premium amounts. *Id.* On July 17, 2000, Hogan was driving his vehicle and struck an automobile containing Harvey Krueger. *Id.* Both men died as a result of the accident. *Id.* at 1201.

Hilda Krueger, individually and as administrator of the estate of Harvey Krueger, filed a complaint against Hogan, Western Reserve, and others, seeking compensation for the wrongful death of her husband, Harvey. *Id.* Western Reserve filed a motion for summary judgment, alleging that it was entitled to judgment as a matter of law because the accident had occurred forty-seven days after the insurance policy issued to Hogan had been cancelled. *Id.* Hilda then filed a motion for summary judgment asserting that Western Reserve did not comply with the statutorily mandated procedure

for cancelling the policy because it failed to supply Southwestern with notice of intent to cancel the policy. *Id.* The trial court granted Western Reserve's motion for summary judgment, and Hilda appealed. *Id.*

On appeal, the court construed Ind.Code § 27–7–6–5, which provided: [3]

> No notice of cancellation of a policy to which section 4 [IC 27–7–6–4] of this chapter applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty (20) days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten (10) days' notice of cancellation accompanied by the reason therefore shall be given. In the event such policy was procured by an agent duly licensed by the state of Indiana, notice of intent to cancel shall be mailed or delivered to such agent at least ten (10) days prior to such mailing or delivery to the named insured unless such notice of intent is or has been waived in writing by such agent.

The court observed that there was no dispute that Hogan was notified on May 19, 2000, that the policy would be cancelled on May 30, 2000, if the premiums were not paid. *Id.* at 1202. The court stated that Hogan "was undisputedly provided with the requisite notice under the statute, and that notice afforded him ample opportunity to pay the premium or procure other insurance coverage." *Id.*

The court also observed:

> [O]ur legislature separated the statutory conditions regarding notice to the insured and the advance notice that should be provided to the agent. Specifically, notice to the insured is a mandatory condition that is necessary to achieve effective cancellation of the policy. The provision begins: "No notice of cancellation . . . shall be effective unless mailed or delivered by the insurer to the named insured. . . ." I.C. § 27–7–6–5. On the other hand, the sentence discussing advance notice to the agent begins: "In the event such policy was procured by an agent duly licensed by the state of Indiana, notice of intent to cancel shall be mailed or delivered to such agent. . . ." *See id.*

*Id.* at 1203. The court affirmed the trial court's grant of summary judgment to Western Reserve and concluded that "[i]t is apparent to us that the primary purpose behind the notice of cancellation provision in the statute is to ensure sufficient notice to the insured," and that "[p]roviding Southwestern with advance notice of cancellation would not have had any effect upon John's action or inaction with regard to paying the premiums under the policy." *Id.*

In *American Standard Ins. Co. of Wisconsin v. Rogers,* 788 N.E.2d 873, 875 (Ind. Ct.App.2003), American Standard Insurance Company of Wisconsin ("American Standard") issued a policy of automobile insurance to Eric Wilson on May 28, 1994. On December 24, 1997, American Standard sent cancellation letters both to its insured, Wilson, and his insurance agent with an effective cancellation date of January 8, 1998. 788 N.E.2d at 875. The letter indicated that $606.16 was due for coverage ending January 8, 1998. *Id.* at 877. To continue coverage beyond January 8, 1998, Wilson owed an additional $352.64, for a total of $958.80. *Id.* The letter further stated that a failure to remit the payment of $958.80 in full prior to the

---

**3.** In 2003, Ind.Code § 27–7–6–5 was amended by substituting "insurance producer" for "agent" throughout the section. *See* Pub. L. No. 178–2003, § 45 (eff. July 1, 2003).

cancellation date of January 8, 1998 would result in an interruption in coverage. *Id.*

On December 29, 1997, Wilson submitted a payment in the amount of $374.30, and a "cancel hold" was placed on the policy the next day. *Id.* at 875. The purpose of the cancel hold was to prevent coverage from lapsing while payment was in transit between the agent and American Standard. *Id.* If Wilson were to make the required payment before January 15, 1998, coverage would be deemed continuous. *Id.* In effect, the cancel hold provided Wilson with seven additional days to make payment to American Standard before coverage would lapse. *Id.* If Wilson failed to make the required payment before January 15, 1998, however, coverage would be terminated retroactive to January 8, 1998. *Id.* After Wilson's payment of $374.30 on December 29, 1997, no further payments were made to his account. *Id.*

On March 4, 1998, Cicily Rogers was operating one of Wilson's vehicles with Wilson's permission and was involved in a collision with a vehicle driven by Eric Roberts. *Id.* at 874–875. Roberts filed a lawsuit for recovery of damages. *Id.* at 874. In response, American Standard filed a complaint seeking a declaratory judgment that the policy did not provide coverage for the accident. *Id.* at 875–876. American Standard alleged that the policy had been cancelled in January 1998, approximately two months before the March 4, 1998 accident. *Id.* at 876. Rogers filed a motion for summary judgment arguing that American Standard's cancellation was ineffective because it failed to strictly comply with Ind.Code § 27–7–6–5. *Id.* American Standard then filed a cross-motion for summary judgment arguing that the cancellation was effective. *Id.* The trial court

denied American Standard's motion and granted Rogers's motion. *Id.*

On appeal, Rogers argued that "cancellation was not effective based on American Standard's failure to provide Wilson's agent with notice 'at least ten (10) days prior to such mailing or delivery to the named insured.' " *Id.* at 880 (quoting Ind. Code § 27–7–6–5). The court found *Krueger* instructive and concluded that "requiring strict compliance with the statute in this case would not serve the intent of the legislature and the purpose of the statute." *Id.* The court also stated that "[p]roviding Wilson's agent with advance notice of the cancellation would not have had any effect upon Wilson's action or inaction with regard to paying the premiums under the policy. Rather, we conclude that American Standard's notice to Wilson on December 24, 1997 afforded him ample opportunity to pay the premium or procure other insurance coverage." *Id.* The court reversed and ordered the trial court to grant American Standard's motion for summary judgment. *Id.*

■■■ Here, the Board concluded that Ind.Code § 22–3–5–5(c) is "intended to protect workers and employers by requiring advanced notice to the employer that its policy is going to be cancelled," and that "[t]his allows the employer time to secure alternate coverage and gives the [Board] the opportunity to insure that the employer complies with the provisions of the Act." Appellant's Appendix at 6. As previously mentioned, we give deference to the Board's interpretation of this statute, and based upon *Moore,* and the language in *Krueger* and *Rogers,* we agree with the Board's interpretation and conclude that the Board's order incorporates a reasonable interpretation of the relevant statute.[4]

---

4. Jones relies upon *American Employers' Ins. Co. v. Huffman,* 97 Ind.App. 548, 187 N.E.

410 (1933). We find *Huffman* distinguishable. In *Huffman,* American Employers' In-

Ind.Code § 22–3–5–5(c) was intended to provide the Board with notice of at least ten days of Indiana Farmers' intent to cancel the insurance. We conclude that the Policy had been properly cancelled ten days after the Board received notice and before Jones's accident which occurred more than forty days after the Board received notice of cancellation.[5] *See Washington Township Fire Dep't v. Beltway Surgery Ctr.*, 911 N.E.2d 590, 599 (Ind.Ct. App.2009) (concluding that the Board's interpretation of the applicable statutes was reasonable and agreeing with that interpretation), *adopted by* 921 N.E.2d 825 (Ind.2010); *see also Campbell v. Home Ins. Co.*, 628 P.2d 96, 99 (Colo.1981) (observing that "[a] majority of the courts hold that a notice of cancellation which purports to cancel a policy of insurance at a time earlier than that fixed by the policy results in the postponement of cancellation until the time period set forth in the policy has expired" and holding that a notice of cancellation that stated an effective date before the ten-day requirement in the insurance policy was still an effective cancellation subject to any extension to meet the ten-day requirement); *Travelers Indem. Co. v. Guess*, 243 Ga. 559, 255 S.E.2d 55, 56 (Ga.1979) (holding that the methods adopted by the legislature were intended to assure actual notice of cancellation to an insured and where it is admitted such notice was received, the purpose of the statute has been accomplished); *Zakrajshek v. Shuster*, 307 Minn. 327, 239 N.W.2d 919, 921 (Minn.1976) (addressing a worker's compensation insurance policy and a statute which provided that "[s]uch cancellation or termination shall not become effective until 30 days after written notice has been filed with the commissioner of the department of labor and industry," and holding that the purpose of the statute was to provide the employer a reasonable opportunity to obtain replacement insurance before coverage terminated and to provide the department a reasonable time to see that he does, and holding that "[t]his purpose is fulfilled by continuing coverage for 30 days following the filing of notice with the department, even if the notice erroneously specifies that cancellation will become effective sooner than 30 days").

surance Company covered the compensation liability of the Interstate Trucking Company up to October 28, 1931, at which time its policy expired and was not renewed, but no notice of cancellation was given by it to the Industrial Board prior to Huffman's accident. 97 Ind.App. at 550, 187 N.E. at 411. The full board held that the policy issued by American Employers' Insurance Company was not cancelled as required by statute before the accident. *Id.* at 552–553, 187 N.E. at 412. On appeal, the court affirmed the order of the full board. *Id.* at 556, 187 N.E. at 413. Here, unlike in *Huffman*, the Board received notice from Indiana Farmers that the Policy had been cancelled on September 19, 2005, or September 22, 2005, more than ten days before Jones's injuries.

5. The record supports the Board's conclusion that the Board was given notice ten days before Jones's accident. Here, on September 6, 2005, Indiana Farmers mailed to CCHI a cancellation notice which indicated that unless the premium payment was received by September 13, 2005, the Policy "would cancel" on September 13, 2005. Appellee's Appendix at 45. Indiana Farmers mailed to CCHI a final cancellation notice on September 13, 2005, confirming that the Policy had been cancelled at 12:01 AM Standard Time on September 13, 2005, for non-payment of premium. The Board received notice of the cancellation of the Policy from Indiana Farmers on September 19, 2005, or September 22, 2005, indicating that the Policy had been terminated effective September 13, 2005. Thus, both the employer and the Board had notice of Indiana Farmers' intent to cancel the policy more than forty days before Jones's accident on November 7, 2005, which is more than the ten days required by Ind.Code § 22–3–5–5(c).

For the foregoing reasons, we affirm the Board's order.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.