## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 14 2020, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Dillman
Dillman Law Group
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Janette E. Surrisi
James N. Clevenger
Wyland, Humphrey, Clevenger & Surrisi, LLP
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Guardianship of Benjamin Jack, an Incapacitated Person,

Alex Jack (Father),

*Appellant-Defendant,*

v.

Christine Jack (Mother),

*Appellee-Plaintiff.*

February 14, 2020

Court of Appeals Case No. 19A-GU-2079

Appeal from the Marshall Circuit Court

The Honorable Curtis Palmer, Judge

Trial Court Cause No. 50C01-1904-GU-16

**Brown, Judge.**

[1] Alex Jack ("Father") appeals the trial court's order naming him and Christine L. Jack ("Mother") as co-guardians of their son, Benjamin. We affirm.

*Facts and Procedural History*

[2] Mother and Father had a son, Benjamin, who was born on July 17, 2001, and suffers from Autistic Spectrum Disorder. In April 2017, the marriage of Mother and Father was dissolved, and they agreed to joint legal custody with Father having primary physical custody.

[3] On April 5, 2019, Mother filed a Petition for Appointment of Guardian Over Person and Estate of an Incapacitated Minor, Soon to Be Age of Majority. The petition sought to "extend [Mother's] rights and obligations of joint legal custody with this petition which may include appointment of [Father] as co-guardian." Appellant's Appendix Volume II at 78. A chronological case summary entry dated April 10, 2019, indicates that Attorney Edward Ruiz filed an appearance on behalf of Father and his current wife, Natalie Jack ("Natalie"). On April 10, 2019, Father and Natalie filed a counter-petition seeking an order appointing them as Benjamin's guardians.

[4] On June 25, 2019, the court held a hearing. When asked by the court if Father and Natalie wanted to be co-guardians excluding Mother as a guardian, Father's counsel answered, "Correct." Transcript Volume II at 3.

[5] Mother testified that Benjamin would turn eighteen in July, she and Father always wanted him to be as independent as possible, and reports from Marshall Starke Center indicated that Benjamin wished to be in a more independent

setting such as a group home. She testified that, based on the last meeting she attended, Benjamin seemed to be ready to make that step and graduated from high school a couple weeks earlier. When asked to describe her objection to Natalie being appointed as a co-guardian, Mother stated that Father and Natalie had been married for a little over a year and she did not feel Natalie had been in Benjamin's life "long enough to make those decisions for him in place of his mother." *Id.* at 11. She testified that she exercised visitation with Benjamin on a regular basis, scheduled activities for him, and met with his case manager, recreational therapist, and his new behavioral therapist.

[6] Father testified he obtained custody of Benjamin two years earlier, he did not believe Benjamin was ready to transition to a group home, and Mother had little to no communication with service providers and had not been proactive. When asked if he was requesting the court to appoint him and Natalie as co-guardians, he answered affirmatively. He indicated he did not feel he and Mother could be effective co-guardians because she does not take initiative or offer any feedback or input. He testified he is a reservist assigned to Grissom Air Reserve Base and Mother's lack of commitment would concern him if he were again deployed and she was left in charge as guardian. When asked if he thought Mother had the track record to show she could follow through on Benjamin's behalf, Father answered: "Anything that I've asked her to do she has done." *Id.* at 31. On cross-examination, Father testified he was deployed three times prior to the dissolution and, during those times, Mother took care of Benjamin. Natalie testified she was very involved with Benjamin's services, she

was willing to act as Benjamin's guardian if Father were deployed, and Mother was not proactively involved in Benjamin's life.

On rebuttal, Mother testified that she told Father and Natalie she would take Benjamin to a doctor's appointment anytime and they just needed "to let [her] know what's going on." *Id.* at 56. She testified that she talked to Father about placing Benjamin on Accutane, she expressed her opinion, and they agreed on the medication. She stated she went to Benjamin's IEP meeting, met with his teacher, and responded to the teacher's emails.

On June 28, 2019, the court entered an order appointing Father and Mother as co-guardians of Benjamin. The court's order states in part:

> 1. Benjamin Jack was born July 17, 2001, and is currently seventeen years of age.
>
> 2. Benjamin Jack, currently a minor, is a resident of Marshall County, Indiana, residing with his father and stepmother . . . .
>
> 3. Benjamin Jack is incapable of handling his personal and financial affairs due to his current minority status and his lifelong developmental limitations due to his autism. He is found to be an incapacitated person.
>
> 4. Benjamin's parents divorced in 2017 and agreed [Father] would have primary physical custody and they would share joint legal custody.
>
> 5. [Father] has since remarried [to] Natalie Jack, the co-petitioner in the counter petition filed herein. They both wish to become co-guardians of Benjamin, to the exclusion of [Mother].
>
> 6. [Mother] seeks to become a co-guardian of Benjamin along with [Father] to the exclusion of the step-mother, Natalie Jack.

7.  IC 29-3-5-5 establishes a priority the court may follow when selecting guardians.  Natural parents share the same priority and are slightly above step-parents in priority.

8.  Mother and [Father] both live in Plymouth and both have maintained regular contact with Benjamin even after the divorce.

* * * * *

10.  [Father] is in the military reserves and is concerned that if called to active duty, he would be unable to perform his duties as a co-guardian while deployed.  He feels stepmother, Natalie Jack, as a co-guardian, would be in a better position to direct the care for Benjamin instead of his mother.

11.  Although the court finds [Father's] concerns to be reasonable, there is no evidence that [Mother] would not be able to direct the care for Benjamin if needed to do so.  She is familiar with his therapists, medications and routines and would have the ability to contact the stepmother if additional information were needed.

12.  While the court recognizes there is some friction between [Mother] and the stepmother, it does not appear to rise to the level that either of them would fail to communicate with one another when Benjamin's best interests are at stake.

* * * * *

14.  [Mother] has been familiar with Benjamin's special needs for eighteen years.  The stepmother has been aware of Benjamin's special needs for eighteen months.  The court finds no basis for excluding [Mother] as a co-guardian for her son.

15.  All of the requirements for the appointment of a guardian as set forth in the Indiana Code have been satisfied and [Father] and [Mother] are entitled to be co-guardians of the person and estate of Benjamin Jack and are so appointed without limitation as to

their duties, responsibilities, or powers as set out in IC §§ 29-3-8-1, 29-3-8-2 and 29-3-8-4.

16. The ward has no significant property or income.

17. The co-guardians need not post a bond nor are they required to file an inventory of current assets. Biennial reports shall be required pursuant to the probate code.

Appellant's Appendix Volume II at 85-88.

On July 29, 2019, Attorney Lisa Dillman filed an appearance on behalf of Father. That same day, Father filed a Motion to Reconsider or in the Alternative a Motion to Correct Errors and attached the Marriage Settlement Agreement, Father's affidavit, and a letter from Quinn Selner, Benjamin's teacher. In the motion, Father asked the court to appoint him as sole guardian and designate Mother and Natalie as standby guardians. In part, Father argued that "[t]he issue or problem arises when Father, as Guardian, needs to make a decision . . . with which Mother does not agree." *Id.* at 97-98.

On August 6, 2019, Mother filed a Motion to Strike Supplemental Documents to Motion to Reconsider and Motion to Correct Errors. On August 7, 2019, the court granted Mother's motion to strike the proffered additional evidence and denied Father's motion to reconsider or correct error.

## *Discussion*

The issue is whether the trial court abused its discretion in naming Father and Mother as co-guardians. Father argues the trial court failed to select the best qualified person and that Ind. Code § 29-3-5-5(b) requires the court to appoint a

single person as guardian. He asserts that while the court found no basis for excluding Mother as a co-guardian, such an analysis does not constitute the test for selecting a guardian. He contends the court disregarded the prior custody determination which demonstrated it was in Benjamin's best interest that he be appointed sole guardian. Mother argues Father waived his argument regarding a sole guardian, Ind. Code § 29-3-5-4 provides the court may appoint persons as co-guardians, and the court heard evidence supporting its conclusion that she should be named as co-guardian.

[12] The trial court is vested with discretion in making determinations as to the guardianship of an incapacitated person or minor. *In re Guardianship of A.L.C.*, 902 N.E.2d 343, 352 (Ind. Ct. App. 2009). This discretion extends to both its findings and its order. *Id.* We apply the abuse of discretion standard to review the trial court's findings and order. *Id.* Because the court set forth findings, we look to those findings to determine whether the court abused its discretion. *See id.* The findings will not be set aside unless clearly erroneous. *Id.* Findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* Further, we will not set aside the judgment unless clearly erroneous. *Id.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. *Id.*

[13] The guardianship statutes provide for the appointment of guardians for minors or incapacitated persons. *See* Ind. Code § 29-3-5-1. Ind. Code §§ 29-3-5 set forth proceedings for the appointment of a guardian, and Ind. Code § 29-3-5-3 provides that, if it is alleged and the court finds that the individual for whom the

guardian is sought is an incapacitated person or a minor and the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor, the court shall appoint a guardian under the chapter.

[14] Ind. Code § 29-3-5-4 is titled "Considerations for appointment of guardian" and provides:

> The court shall appoint as guardian a qualified person or persons most suitable and willing to serve, having due regard to the following:
>
> (1) Any request made by a person alleged to be an incapacitated person, including designations in a durable power of attorney under IC 30-5-3-4(a).
>
> (2) Any request made for a minor by:
>
> (A) a parent of the minor; or
>
> (B) a de facto custodian of the minor, including a designation in a power of attorney under IC 30-5-3-4(b) or IC 30-5-3-4(c).
>
> (3) Any request contained in a will or other written instrument.
>
> (4) A designation of a standby guardian under IC 29-3-3-7.
>
> (5) Any request made by a minor who is at least fourteen (14) years of age.
>
> (6) Any request made by the spouse of the alleged incapacitated person.
>
> (7) The relationship of the proposed guardian to the individual for whom guardianship is sought.

(8) Any person acting for the incapacitated person under a durable power of attorney.

(9) The best interest of the incapacitated person or minor and the property of the incapacitated person or minor.

[15] Ind. Code § 29-3-5-5 is titled "Considerations for appointment of guardian; order of consideration; priorities" and provides:

(a) The following are entitled to consideration for appointment as a guardian under section 4 of this chapter in the order listed:

(1) A person designated in a durable power of attorney.

(2) A person designated as a standby guardian under IC 29-3-3-7.

(3) The spouse of an incapacitated person.

(4) An adult child of an incapacitated person.

(5) A parent of an incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitated person and attested to by at least two (2) witnesses, or in a power of attorney of a living parent of an incapacitated person under IC 30-5-3-4(c).

(6) A parent of a minor, a de facto custodian of a minor, or a person nominated:

(A) by will of a deceased parent or a de facto custodian of a minor; or

(B) by a power of attorney of a living parent or a de facto custodian of a minor.

(7) Any person related to an incapacitated person by blood or marriage with whom the incapacitated person has

resided for more than six (6) months before the filing of the petition.

(8) A person nominated by the incapacitated person who is caring for or paying for the care of the incapacitated person.

(b) With respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian. The court, acting in the best interest of the incapacitated person or minor, may pass over a person having priority and appoint a person having a lower priority or no priority under this section.

[16] To the extent Father argues on appeal that the court abused its discretion by appointing him and Mother as co-guardians and could have appointed only one individual as guardian, we observe that the April 10, 2019 counter-petition filed by Father and Natalie asserted that "it is necessary that [Father] and Natalie Jack be appointed guardians for [Benjamin] in order to provide for his care, custody, support, maintenance" and requested an order "[a]ppointing [Father] and Natalie [Jack] as the guardians of the person and estate of" Benjamin. Appellant's Appendix Volume II at 82. Further, at the hearing, Father indicated multiple times that he was seeking a co-guardianship with Natalie. During closing argument, Father's counsel asserted that the best option would be to appoint Father and Natalie as co-guardians. We conclude Father has waived the argument that the trial court's discretion was limited to appointing only one guardian. Waiver notwithstanding, we cannot say that the trial court abused its discretion.

When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind. 2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Id.* A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 942 (Ind. 2001). If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin*, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.* A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Mayes v. Second Injury Fund*, 888 N.E.2d 773, 776 (Ind. 2008). "To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute." *Young v. Hood's Gardens, Inc.*, 24 N.E.3d 421, 425 (Ind. 2015) (quoting *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007) (internal citation omitted)).

[18]    While Ind. Code § 29-3-5-5(b) provides in part that "[w]ith respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian," Ind. Code § 29-3-5-4 explicitly provides that "[t]he court shall appoint as guardian a qualified person *or persons* most suitable and willing to serve, having due regard to the following . . . ." (Emphasis added). We cannot say that the court abused its discretion by appointing co-guardians. *See*

*In re Guardianship of Atkins*, 868 N.E.2d 878, 884 (Ind. Ct. App. 2007) ("Based upon the evidence presented, the trial court did not abuse its discretion when it found that it was in Patrick's best interest to appoint the Atkinses as co-guardians of his person."), *reh'g denied*, *trans. denied*.

[19] With respect to Mother's appointment, we note that Ind. Code § 29-3-5-5 establishes a priority for parents. The court found no evidence that Mother would be unable to direct the care for Benjamin if she needed to do so. It also found that Mother was familiar with his therapists, medication, and routines, would have the ability to contact the stepmother if additional information was needed, and that Mother had been familiar with Benjamin's needs for eighteen years. Based upon the evidence and testimony presented, we cannot say the trial court abused its discretion in appointing Father and Mother as co-guardians.

[20] For the foregoing reasons, we affirm the order of the trial court.

[21] Affirmed.

Baker, J., and Riley, J., concur.