EASTERN ALLIANCE INSURANCE GROUP, Chubb Insurance Group, and Total Interior Systems America, LLC, Appellants–Defendants,

v.

Elizabeth HOWELL, Appellee–Plaintiff.

No. 93A02–0912–EX–1287.

Court of Appeals of Indiana.

July 14, 2010.

Michael A. Schoening, Nation Schoening Moll, P.C., Fortville, IN, Attorney for Appellant Eastern Alliance Insurance Group.

Monica C. Gilmore, The Law Offices of Matt Parmenter, Vincennes, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Eastern Alliance Insurance Group, formerly known as Employer's Security Insurance ("Eastern"), appeals the decision of the Full Worker's Compensation Board ("the Board") in which the Board assessed penalties against Eastern due to a lack of diligence.[1]  Eastern raises two issues for our review, which we restate as the following dispositive issue: whether sufficient evidence supports the Board's conclusion that Eastern acted with a lack of diligence.

---

1. Neither Total Interior Systems America, LLC nor Chubb has filed a brief in this appeal.  However, they were parties of record before the Board in this cause and they are, therefore, parties to this appeal.  Ind. Appellate Rule 17(A).

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

In June of 2005, Elizabeth Howell suffered an injury that arose out of and in the course of her employment with Total Interior Systems America, LLC ("TISA"). Howell sought and received medical treatment for that injury. In February of 2007, Howell suffered an aggravation of that injury, which was also related to her work activity. From the onset of her first injury to October 15, 2006, Eastern provided TISA's worker's compensation insurance coverage. Thereafter, Chubb Insurance Group ("Chubb") provided TISA's coverage.

Shortly after Howell aggravated her injury, TISA "began a quest to attain the recommended surgery through" Eastern and Chubb. Appellant's App. at 11. Eastern asserted that Chubb was responsible for paying Howell's continuing medical expenses, and Chubb asserted that Eastern was responsible. Nonetheless, in March of 2007, shortly after it was contacted by TISA, Eastern offered to split the cost of Howell's medical treatment with Chubb "and resolve later the ultimate obligation to pay." *Id.* Chubb refused. As a result, neither company paid Howell's medical bills and she went approximately two and one-half years without compensation.

On June 27, 2007, Howell filed an application for adjustment of claim for worker's compensation benefits. After hearings before a single hearing member and then the full board, the Board entered an order in Howell's favor on December 16, 2009. In relevant part here, the Board entered the following findings and conclusions:

27. *[Chubb] is responsible for providing coverage related to [Howell's] current need for treatment* to her left upper extremity as outlined by Dr. Marburger.

28. Following receipt of the recommendation for further treatment, [TISA] began a quest to attain the recommended surgery through the worker's compensation insurance carriers. As noted in the Stipulations …, [TISA's] coverage had been shifted from [Eastern] to [Chubb].

29. The activities on behalf of [Howell] that were taken by [TISA] included contacting the two carriers requesting that they "step up to the plate" and provide [Howell] with the necessary treatment. [TISA] also directly assisted [Howell] in her communications with the Worker's Compensation Board, including assisting her with a request for an emergency hearing.

\*　　\*　　\*

31. *[Eastern] proposed in March 2007 that the two carriers split the cost of the necessary treatment and resolve later the ultimate obligation to pay.*

32. *[Eastern's position was] fully consistent with the stated opinion and position of [TISA] that [Howell] was entitled to receive the recommended medical treatment* as statutory medical [sic] under the Act.

33. [Chubb] declined the offer of [Eastern], ostensibly because [Chubb] identified an opportunity to escape the claim entirely because of a perceived potential to exclude the claim as untimely.

34. The Single Hearing Member is unable to identify any record that gives weight to any suggestion that [Howell's] condition results from anything other than her work activities.

\*　　\*　　\*

36. As testified to by the [TISA] representative, the record is most suggestive of a battle between worker's compensation insurance carriers as to which

should pay for treatment for this injured worker.

37. A worker's compensation insurance carrier is not guilty of lack of diligence just because they end up being wrong. This case, however, is so heavily weighted in favor of providing [Howell] with prompt treatment recommended by the [TISA]-selected physician, the Full Worker's Compensation Board sees no conclusion except that we have reached this place through lack of diligence.

38. [Chubb's] assertion of the expiry of the time for filing a claim does not shield it from a claim of lack of diligence. The record may only support their claimed assertion by using a very strained view of the evidence.

39. *[Eastern] had the benefit of a medical record that weighed heavily in favor of finding responsibility in [Chubb]. Nevertheless, although attempting to derail this matter from the impending "train wreck" that it likely foresaw, [Eastern] did not step forward to provide the clearly recommended care. Such a course would have been most consistent with the humane purposes of the Act under the instant facts.*

40. The Full Board concludes that an award against [Eastern] for lack of diligence is appropriate.

\* \* \*

46. The delay occasioned by the lack of diligence of [Chubb and Eastern] caused [Howell] unnecessary suffering.

\* \* \*

48. Pursuant to Indiana Code [Section] 22–3–4–12.1, there is assessed against [Chubb] for lack of diligence the penalty of [$10,000].

49. Pursuant to Indiana Code [Section] 22–3–4–12.1, there is assessed against [Eastern] for lack of diligence the penalty of [$5,000].

50. [Howell's] attorney[s] are entitled to an additional award pursuant to Indiana Code [Section] 22–3–4–12.1 in the amount of [$5,000], with [$3,333] payable by [Chubb] and [$1,667] payable by [Eastern].

*Id.* at 11–14 (emphases added). Eastern appeals.

## DISCUSSION AND DECISION

Eastern contends on appeal that the Board incorrectly applied Indiana Code Section 22–3–4–12.1(a) ("Section 12.1(a)") of the Worker's Compensation Act ("the Act"). Section 12.1(a) of the Act provides as follows:

The worker's compensation board, upon hearing a claim for benefits, has the exclusive jurisdiction to determine whether the employer, the employer's worker's compensation administrator, or the worker's compensation insurance carrier has acted with a lack of diligence, in bad faith, or has committed an independent tort in adjusting or settling the claim for compensation.

Indiana Code Section 22–3–4–12.1(b) permits the Board to assess a financial penalty against an entity that is found to have acted with a lack of diligence, in bad faith, or to have committed an independent tort in adjusting or settling a claim.

■ The Board concluded that Eastern acted with a lack of diligence, contrary to Section 12.1(a), and it assessed penalties against Eastern accordingly. In evaluating the Board's decision, we employ a two-tiered standard of review. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind.Ct.App. 2008), *trans. denied.* First, we review the record to determine if there is any competent evidence of probative value to support the Board's findings. *Id.* We then assess whether the findings are sufficient to support the decision. *Id.* We will not reweigh

the evidence or assess witness credibility. *Id.*

"As to the Board's interpretation of the law, an appellate court employs a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area." *Christopher R. Brown, D.D.S., Inc. v. Decatur County Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind.2008). "An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000). Further, the Act

> is a humane enactment designed and intended for the protection of workmen who come within its provisions, which are and ought to be liberally construed and applied, so as to extend that protection to the ultimate good of the greatest possible number of our workers; but the extent and limitation of its applicability also are fixed by those provisions and we cannot, by judicial pronouncement, enlarge these beyond the very obvious intent of the Legislature.

*Christopher R. Brown, D.D.S., Inc.*, 892 N.E.2d at 649 (quotation omitted).

When interpreting a statute, our ultimate goal is to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *See Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind.2002). The best evidence of legislative intent is the language of the statute itself, and courts strive to give the words in a statute their plain and ordinary meaning. *Mayes v. Second Injury Fund*, 888 N.E.2d 773, 776 (Ind.2008). A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. *Id.* We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.*

Eastern contends that penalties for lack of diligence "should not be awarded against [an entity that] is ultimately deemed not responsible for the underlying worker's compensation benefits." Appellant's Br. at 10. This court has held that Section 12.1(a) penalties for "bad faith" may not be assessed if the employer, or its worker's compensation insurance carrier, is ultimately found not to be responsible for the underlying claim. *See Ag One Co-op v. Scott*, 914 N.E.2d 860, 863–64 (Ind. Ct.App.2009); *Borgman v. Sugar Creek Animal Hosp.*, 782 N.E.2d 993, 998 (Ind. Ct.App.2002), *trans. denied.* Relying on that case law, Eastern contends that "[t]he same logic should preclude the [a]ward entered by the Board against [Eastern]." Appellant's Br. at 14.

In *Ag One Co-op*, we reasoned as follows:

> [i]n the context of the denial of insurance claims, a finding of bad faith requires evidence of a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, or ill will. Poor judgment and negligence ... do not amount to bad faith; the additional element of conscious wrongdoing must be present.

914 N.E.2d at 864 (quotation and citation omitted). Thus, we held that an entity cannot "act[ ] in bad faith in properly denying ... claims for benefits" since there can be no conscious wrongdoing in the proper denial of a claim. *Id.* (emphasis removed).

But a lack of diligence requires no con-

scious wrongdoing by the actor.[2] To act with "diligence" is to act with "caution or care" or "the attention and care required of a person." Webster's 3d New Int'l Dictionary 633 (2002). Hence, to act with a "lack of diligence" is to act without the degree of attention and care required of a person. Stated affirmatively, a lack of diligence is a failure to exercise the attention and care that a prudent person would exercise. That is, to act with a lack of diligence is to act negligently.[3]

As such, Eastern's reasoning on appeal conflates "lack of diligence" with "bad faith." See I.C. § 22–3–4–12.1(a). It is true that, in the general context of assessing a punitive award for the improper denial of an insurance claim, "the lack of diligent investigation alone is not sufficient to support an award. On the other hand . . ., an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty" of good faith and fair dealing. Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 520 (Ind. 1993) (citation omitted). But the plain language of Section 12.1(a) distinguishes "lack of diligence" from "bad faith" and permits the Board to assess punitive damages on the basis of lack of diligence alone. See I.C. § 22–3–4–12.1(a). To require that the Board assess punitive damages for lack of diligence only when the insurer also acts in bad faith would merge the two concepts and obviate the distinction.

Nonetheless, and while we affirm the Board's interpretation that lack of dili-gence does not require conscious wrongdoing by the actor, there still must be some evidence that the actor failed to exercise the attention and care that a prudent actor would have exercised. Here, the Board found that Eastern refused to pay Howell's claim only after Eastern had correctly determined that the medical record for that claim "weighed heavily in favor of finding responsibility in [Chubb]." Appellant's App. at 12. The Board also found that Eastern "attempt[ed] to derail this matter from the impending 'train wreck' that it likely foresaw," and, shortly after being informed of Howell's February 2007 claim, Eastern offered to "split the cost of the necessary treatment [with Chubb] and resolve later the ultimate obligation to pay," which was "fully consistent with the stated opinion and position of [TISA] that [Howell] was entitled to receive the recommended medical treatment." Id. at 11–13. There is no evidence that Eastern did not give Howell or TISA a timely response to the February 2007 claim. There is no evidence that Eastern did not reasonably investigate that claim. There is no evidence that Eastern improperly responded to Howell's original June 2005 claim. And the evidence shows that Eastern did, in fact, offer to split the costs of Howell's treatment with Chubb and to resolve later the ultimate obligation to pay those costs.

Despite those facts, the Board concluded that "we have reached this place through lack of diligence" and that Eastern acted

---

2. To be sure, however, a lack of diligence is often accompanied by bad faith. See, e.g., Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 520 (Ind.1993).

3. Our use of the term "negligence" is simply as a synonym to the statutory phrase "lack of diligence." We do not hold that, in order for a party to demonstrate that an entity has acted with a lack of diligence, that party must formally demonstrate the elements of the tort of negligence. Had the General Assembly sought such a result, it would have clearly stated so and not have used the alternative phrase of "lack of diligence" in Section 12.1(a). See Curley v. Lake County Bd. of Elections & Registration, 896 N.E.2d 24, 37 (Ind.Ct.App.2008) ("[I]n interpreting a statute, we must consider not only what the statute says but what it does not say."), trans. denied.

with a lack of diligence when it "did not step forward to provide the clearly recommended care." *See id.* at 12. Those conclusions, as applied to Eastern, are not supported by the Board's own findings and they are, therefore, clearly erroneous. Eastern exercised reasonably prudent care and attention at all times. It investigated the claim, reasonably determined that it had no liability in the matter, and even offered to split Howell's medical costs with Chubb, which Chubb refused to do. Again, the medical record underlying Howell's claim did not suggest that a genuine question existed regarding which insurer was responsible for the claim; rather, the record "weighed heavily in favor of finding responsibility in [Chubb]." *Id.* Hence, Eastern acted in a reasonably prudent manner by refusing to pay a claim when there was no apparent reason to believe it was required to do so.

Accordingly, we hold that the Board's conclusion that Eastern acted with a lack of diligence is clearly erroneous. The Board's factual findings demonstrate that Eastern reasonably investigated the claim and communicated with the parties, and, afterwards, it reasonably determined that it was not liable for the claim. And, again,

significantly, Eastern offered to split Howell's medical costs up front with Chubb, which, in the Board's own words, was "fully consistent with the stated opinion . . . that [Howell] was entitled to receive the recommended medical treatment as statutory medical under the Act." *Id.* at 11. As such, we reverse the Board's conclusion that Eastern acted with a lack of diligence, and we vacate the penalties assessed against Eastern. Further, we remand with instructions that the Board determine and enter an order regarding whether Chubb should be held responsible for the entirety of the penalty and attorneys' fees awarded for its lack of diligence. *See Ag One Co-op*, 914 N.E.2d at 864 (Robb, J., concurring).

Reversed and remanded with instructions.

VAIDIK, J., and BROWN, J., concur.