## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Gabriel J. Quearry
Quearry Law, LLC
Greenwood, Indiana

ATTORNEY FOR APPELLEE

Sonia Das
Inman & Fitzgibbons, Ltd.
Chicago, Illinois

## IN THE
# COURT OF APPEALS OF INDIANA

Debbie Schinbeckler,

*Appellant-Plaintiff,*

v.

Express Scripts, Inc. and
Travelers Insurance Co.,

*Appellees-Defendants.*

January 22, 2016

Court of Appeals Case No.
93A02-1503-EX-176

Appeal from the Worker's
Compensation Board of Indiana

The Honorable Linda Peterson
Hamilton, Chairperson

Application Cause Nos.
C-222046, C-222742

**Mathias, Judge.**

[1] Debbie Schinbeckler ("Schinbeckler") appeals the order of the Full Indiana Workers Compensation Board ("the Board") denying her claim that Travelers Insurance Company ("Travelers") acted with a lack of due diligence in adjusting her claim for worker's compensation. On appeal, Schinbeckler

presents four issues for our review, which we consolidate and restate as whether the Board clearly erred in denying her claim.

We affirm.

## Statement of Facts

The facts most favorable to the decision of the Board reveal that Schinbeckler was employed by Express Scripts, Inc. ("Express"). On October 31, 2011, she sprained her left ankle when she tripped on a raised floor in the kitchen area at Express. The injury caused a significant amount of swelling and bruising. Although Schinbeckler reported her injury to her immediate supervisor and coworkers, she did not file an accident report at the time, nor did she immediately seek medical treatment. When the swelling and bruising subsided after approximately six weeks, Schinbeckler still had difficulty with the range of motion in her foot.

Schinbeckler first saw a physician on January 23, 2012, when she was treated for her ankle injury by Dr. Corey Kendall ("Dr. Kendall") at Ortho Indy. Schinbeckler told Dr. Kendall that she had "rolled her ankle on Halloween, and had a severe ankle sprain." Appellant's App. p. 48. She also indicated that she had difficulty walking without tripping because she could not lift her foot. Dr. Kendal took an x-ray of Schinbeckler's left ankle and conducted a physical exam. This revealed Schinbeckler's left ankle did not have a fracture and that the pain and swelling had subsided. Evidence of an old metatarsal fracture was

present, and the report states that Schinbeckler had a "history of ankle surgery." Appellant's App. p. 50. Dr. Kendall's report concluded:

> We reviewed her x-ray and exam. We discussed the nature of the foot drop, and that we need to determine where the nerve is being affected. We are going to send her for an EMG, and fit her with an AFO [ankle foot orthosis]. She is going to call us after her test is complete so we may refer her to the appropriate provider for care. She is aware this may or may not improve. Her questions were answered today to her satisfaction.

*Id*. at 50.

[5] As recommended, Schinbeckler had an EMG on January 31, 2012. The results of the EMG indicated "electrodiagnostic evidence of a left fibular mononeuropathy[1] located at the fibular head with acute denervation and axon loss. Clinical correlation required." Appellee's App. p. 1. The EMG further revealed, "evidence of a polyneuropathy[2] in the bilateral lower extremities as well. Clinical correlation required. This most likely represents an incidental finding as patient was asymptomatic on the right lower extremity." *Id*. at 2. The EMG report recommended repeated testing in nine to twelve months if the symptoms persisted or worsened, "solely for prognostic value." *Id*.

---

[1] Mononeuropathy is "a nerve disease affecting only a single nerve." *Merriam-Webster*, http://www.merriam-webster.com/medical/mononeuropathies.

[2] Polyneuropathy is "the simultaneous malfunction of many peripheral nerves throughout the body." *Merck Manual*, http://www.merckmanuals.com/home/brain,-spinal-cord,-and-nerve-disorders/peripheral-nerve-disorders/polyneuropathy.

[6] Schinbeckler then saw her family physician, Dr. Rebecca Small ("Dr. Small"), on February 13, 2012.  Dr. Small noted in her report that Schinbeckler had reduced sensation in her feet and toes. Also indicated in the report is that Schinbeckler had "reduced strength with dorsiflexion[3] in her LLE [lower left extremity]." Appellee's App. p. 7. Dr. Small's notes indicate that Schinbeckler had a prior surgical history that included "repair of the leg." *Id.* at 5. On February 15, 2012, Schinbeckler asked Dr. Small if she should continue to go to Ortho Indy for her ankle, as she was not sure if her ankle issues were related to Dr. Small having recently diagnosed her with diabetes mellitus. Dr. Small recommended that she continue going to Ortho Indy because her ankle issues could be something other than complications arising out of her diabetes.

[7] On February 23, 2012, Schinbeckler was seen by Dr. Bradley Jelen ("Dr. Jelen") at Ortho Indy. Dr. Jelen noted that Schinbeckler sprained her ankle on October 31, 2011. Dr. Jelen also diagnosed Schinbeckler with left foot drop secondary to mononeuropathy of the left peroneal nerve[4] at the fibula.[5] His

---

[3]  Dorsiflection is "flexion in a dorsal direction; especially:  flexion of the foot in an upward direction." *Merriam-Webster*, http://www.merriam-webster.com/medical/dorsiflexion.

[4]  "The peroneal nerve is a branch of the sciatic nerve, which supplies movement and sensation to the lower leg, foot and toes."  MedlinePlus, U.S. National Library of Medicine, https://www.nlm.nih.gov/medlineplus/ency/article/000791.htm.

[5]  The fibula is:

> the outer or postaxial and usually the smaller of the two bones of the hind or lower limb below the knee that is the slenderest bone of the human body in proportion to its length, articulates above with the external tuberosity of the tibia and below with the talus, and has its lower end forming the external malleolus of the ankle—called also calf bone.

*Merriam-Webster*, http://www.merriam-webster.com/medical/fibula.

report also indicates that there may have been compression of the nerve above the fibula "that could have been a result of the trauma that she sustained previously[.]" Appellant's App. p. 54. Dr. Jelen discussed the possibility of surgical decompression of the nerve but recommended that Schinbeckler get an MRI to rule out the possibility of a lesion in the affected area. He instructed Schinbeckler to return to him after having the MRI. He also noted that Schinbeckler had an unstable gait and was at risk for falling due to her foot drop issues.[6] Schinbeckler had an MRI of her ankle performed on February 28, 2012. The MRI revealed a sharp angulation of the left peroneal nerve near the proximal fibula, with no lesions present.

[8] Schinbeckler completed her first Accident Report with her employer on March 2, 2012, over four months after her accident occurred. Schinbeckler admits that this date is the date that her employer's worker's compensation carrier, Travelers, first learned of her accident. *See* Appellant's Br. p. 11 ("[O]n March 2, 2012, Travelers became aware of Schinbeckler's left ankle injury."). Travelers then began an attempt to determine whether Schinbeckler's mononeuropathy was caused by her October 31 accident.

[9] Travelers requested authorization to obtain Schinbeckler's medical records on March 9, 2012. On March 16, 2012, Travelers informed Schinbeckler that it had reviewed her medical records with a nurse. Importantly, as evidenced by emails

---

[6] As noted by the Board, Schinbeckler did subsequently fall several times thereafter.

exchanged between Schinbeckler and Travelers' claims adjuster, Linda Mueller ("Mueller"), Dr. Jelen could not opine as to whether Schinbeckler's injuries were work related. In fact, Schinbeckler herself sent an email to Ortho Indy on March 19, 2012, in which she stated:

> Date of injury 10-31-2011 sprained left ankle at work. After injury didn't heal & progressed into continuing pain & swelling with the end result of no mobility of foot. I didn't file this initially as workers comp and should [have]. D[ue] to my own ignorance of the importance of this I need this to be refiled indicating the workers comp status. I also need the diag code to be reflective of the MRI results as a traumatic injury to my left leg that will require surgery for repair. Sorry for the additional work this has involved.

Appellant's App. p. 57.

[10] On March 26, 2012, Travelers issued a Notice of Denial of Schinbeckler's worker's compensation claim, which stated in relevant part:

> Claim reported for left sprained ankle almost 4 months after incident. Claimant treated through her primary health insurance starting approximately 3 months after alleged sprained ankle. She now will require surgery for left foot-drop condition. Ortho records do not reflect that this condition is work related and she does have other personal health conditions which may be affecting her condition. We have requested personal health records and will consider IME to determine whether the current condition and recommended surgery is related to a sprained ankle from 10/31/11.

Appellee's App. p. 12.

[11] Schinbeckler still sought treatment and worker's compensation coverage for her injuries. Travelers arranged for Schinbeckler to see another physician to determine if her medical issues were the result of her work injury. Schinbeckler was initially seen by Dr. Douglas Flory ("Dr. Flory") at My OrthoTeam Emerson on May 17, 2012. Dr. Flory did not perform an examination at that time because he had not yet received Schinbeckler's medical records. The examination was rescheduled, and Schinbeckler was seen by Dr. Flory on June 7, 2012. Dr. Flory diagnosed Schinbeckler with peroneal neuropathy with associated foot drop resulting in an altered gait, along with continued swelling and weakness of the left ankle. Dr. Flory indicated that the injuries were related to the October 31 sprain that occurred at Schinbeckler's place of employment and recommended nerve decompression surgery. Dr. Flory gave his report to Travelers on June 19, 2012. Eight days later, on June 27, 2012, Travelers notified Schinbeckler that Dr. Flory had concluded that her injuries were work related and authorized treatment for her that same day.

[12] Dr. Jelen performed decompression surgery on Schinbeckler's left peroneal nerve on July 11, 2012, but many of her problems persisted. After the issuance of Dr. Flory's report, Schinbeckler's medical expenses were paid by Travelers until her last visit to Ortho Indy in July 2014, and she received temporary total disability benefits from the date of her surgery until she returned to work in September 2012. Schinbeckler was discharged from Dr. Jelen's care on March 19, 2013, at which time he noted that Schinbeckler continued to suffer from a left foot drop with resulting gait abnormalities and balance issues. A subsequent

evaluation revealed that Schinbeckler could perform sedentary work. Dr. Jelen recommended that Schinbeckler continue to use a "quad" cane, a support hose, and an ankle foot orthosis brace. He also recommended a medical follow-up as needed for her left lower extremity injury and a handicap license plate, close parking at work, limited use of stairs, and a work-at-home-option, if available. Dr. Jelen gave Schinbeckler a 32% left lower extremity permanent partial impairment ("PPI") rating, which he converted to a 13% whole person PPI.

[13] To resolve Schinbeckler's claim, Travelers offered her a 32% PPI rating of the lower left extremity, as indicated by Dr. Jelen. Schinbeckler declined this offer. Travelers then offered her a 13% whole person PPI rating, which Schinbeckler also declined.

## Procedural History

[14] Express initiated an application for adjustment of claim before the Board after a dispute arose regarding the calculation of Schinbeckler's PPI rating. Schinbeckler then filed her own application for adjustment of claim on October 21, 2013, seeking compensation for a subsequent alleged injury and also seeking attorney fees. Both applications were tried before a single hearing member of the Board on September 24, 2014. The single hearing member characterized Schinbeckler's claim for attorney fees as a request for an award for lack of due diligence on the part of Travelers. On October 22, 2014, the single hearing member found in relevant part:

> 6. Travelers' decision to obtain a second medical opinion from
> Dr. Flory was made after they were unable to obtain a clear

opinion on causation from Dr. Jelen. This is not an act of bad faith. However, the evidence does reveal that Schinbeckler's medical treatment [w]as delayed for nearly five months (from her visit with Dr. Jelen of February 23, 2012 to her surgery of July 11, 2012) as a result. There is no justification for the length of this delay. This is especially so given the seriousness of Schinbeckler's injury and her substantial problems with mobility occurring as a result thereof.

Greater dispatch should have been employed in the adjusting of this claim. There are a number or things that could have been done to expedite this process, the failure of which resulted in a substantial delay in the provision of necessary medical treatment for a serious injury. The greater weight of the credible evidence establishes that Travelers acted with a lack of diligence in adjusting Schinbeckler's claim in this regard.

Appellee's App. p. 20.

Travelers then sought review by the full Board on November 21, 2014. On February 26, 2015, the Board issued an order reversing the single hearing member's order on the issue of due diligence. The Board's order did not, however, contain specific findings and conclusions.

Schinbeckler filed her notice of appeal from the Board's order on March 23, 2015. Then, on May 12, 2015, Schinbeckler filed a verified motion to remand the case with instructions for the Board to enter specific findings and conclusions as required by Indiana Code section 22-3-4-7. After Travelers filed a response, this court issued an order on May 26, 2014, which *inter alia* granted Schinbeckler's motion and instructed the Board to enter specific findings and

conclusions within thirty days. The Board did so on June 18, 2015, finding in relevant part:

> 6.   Travelers' decision to obtain a second medical opinion from Dr. Flory was made after they were unable to obtain a clear opinion on causation from Dr. Jelen. This is not an act of bad faith. Regret[t]ably, Schinbeckler's medical treatment was delayed for nearly five months (from her visit with Dr. Jelen of February 23, 2012 to her surgery of July 11, 2012) as a result; however, the delay was not caused by Travelers' failure or refusal to act. Schinbeckler has not met her burden of proving bad faith on the part of Travelers.

Appellant's App. p. 8.  This appeal ensued.

## Standard of Review

Schinbeckler claims a lack of due diligence on the part of Travelers. Although a finding of "bad faith" requires evidence of a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, or ill will, a finding of a lack of diligence requires no conscious wrongdoing by the actor. *Eastern Alliance Ins. Group v. Howell*, 929 N.E.2d 922, 926 (Ind. Ct. App. 2010) (citing *Ag-One Co-op v. Scott*, 914 N.E.2d 860, 864 (Ind. Ct. App. 2009).

> To act with "diligence" is to act with "caution or care" or "the attention and care required of a person." Webster's 3d New Int'l Dictionary 633 (2002). Hence, to act with a "lack of diligence" is to act without the degree of attention and care required of a person.  Stated affirmatively, a lack of diligence is a failure to exercise the attention and care that a prudent person would exercise. That is, to act with a lack of diligence is to act negligently.

*Howell*, 929 N.E.2d at 926.

[18] When reviewing a decision of the Board, we employ a two-tier standard of review. *Scott*, 914 N.E.2d at 862-63. First, we review the record to determine if competent evidence of probative value supports the Board's findings. *Id.* at 863. We then determine whether the findings support the Board's decision. *Id.* We are bound by the Board's findings of fact and may not disturb the decision unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Id.* We do not reweigh the evidence or assess the credibility of the witnesses. *Id.* However, when the question before this court is a legal question, we do not grant the same degree of deference to the Board's decision. *Id.* (citing *Walker v. Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 266 (Ind. 1998)). The law is the province of the judiciary, and our constitutional system empowers the courts to draw legal conclusions. *Id.* (citing *Walker*, 694 N.E.2d at 266).

[19] We further observe that Schinbeckler bore the burden of proving that Travelers acted without due diligence. *See Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 23 (Ind. Ct. App. 2001) (noting that worker's compensation claimant bears the burden of proof). Therefore, Schinbeckler appeals from a negative judgment. When reviewing a negative judgment, we will not disturb the Board's findings of fact unless we conclude that the evidence is undisputed and leads inescapably to a contrary result, considering only the evidence that tends to support the Board's determination together with any uncontradicted adverse evidence. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind. Ct. App. 2008).

## Discussion and Decision

[20] Schinbeckler argues on appeal that the Board erred in concluding that Schinbeckler did not prove that Travelers did not act with due diligence. Schinbeckler refers to several instances which she argues supports her claim of a lack of due diligence.

[21] First, she claims that Travelers failed to exercise the attention and care that a reasonably prudent person would have in determining whether her injury was work related. Schinbeckler refers to the email exchanges between her and Travelers' claims adjuster Mueller in which Schinbeckler asked Mueller what information she needed to provide to Dr. Jelen for him to conclude that Schinbeckler's injury was work related. Mueller never directly responded to this question, which Schinbeckler now claims is evidence of Travelers' lack of diligence. Schinbeckler sent one email on March 16, 2012, stating, "In regards to my claim, what do you need from Dr. Jelen in regards to my injury happening at work." Appellant's App. p. 60.

[22] On April 10, 2012, Mueller sent Schinbeckler an email informing her that she had faxed a letter to Dr. Jelen asking his opinion on whether Schinbeckler's injury was work related. On April 23, 2012, Mueller sent Schinbeckler an email telling her that Dr. Jelen could not form an opinion on whether her injury was work related or not. This is not surprising. Dr. Jelen's reports do not indicate that the injury was work related, and Schinbeckler herself effectively admitted that she did not inform the staff at Ortho Indy that her injury was related to an accident at work. We cannot say that Travelers failure to respond to this poorly

framed question constitutes evidence of lack of due diligence. Instead, when Dr. Jelen was unable to opine as to whether Schinbeckler's injury was work related, Travelers sought the opinion of another physician, Dr. Flory. Although it took some time for Schinbeckler to finally see Dr. Flory, as discussed below, we do not think this delay was excessive.

[23] Travelers did not learn of Schinbeckler's injury until March 2, 2012. Travelers then requested Schinbeckler's medical records and issued a denial of claim on March 26, 2012. As soon as April 4, 2012, Travelers informed Schinbeckler that they were attempting to schedule an appointment with another physician because Dr. Jelen could not opine as to the question of whether the injury was work related. Schinbeckler's first appointment with Dr. Flory was on May 17, 2012, but he did not examine her because he had not yet received her medical records. Then, On May 21, 2012, Mueller emailed Schinbeckler informing her that she would see Dr. Flory on June 7, 2012.

[24] Thus, from the time Travelers learned of Schinbeckler's injury to the time she was finally examined by Dr. Flory was just over three months. In this time, Travelers reviewed Schinbeckler's claim with a nurse and initially denied it. When Dr. Jelen was unable to form an opinion on whether the injury was work related, Travelers sought the opinion of another physician. Once Dr. Flory issued his opinion that the injury was work related, Travelers authorized surgery. We cannot say that the Board was required to consider this delay as evidence of a lack of due diligence.

[25]     Schinbeckler also complains that Travelers did not present any evidence that it contacted any of her coworkers who were present when she sprained her ankle at work. However, the burden of proof was on Schinbeckler, not Travelers. *Smith*, 754 N.E.2d at 23.

[26]     Schinbeckler next argues that Travelers did not respond to her requests that Travelers look at her Accident Investigation Report or look for the work order showing that the area where she tripped was later repaired. Schinbeckler again refers to an email she sent to Mueller stating: "Did you receive corrections from Dr. Flory[?] I looked at the accident report and it states the problem with the kitchen floor. I am sure you can get a copy of the work order showing the repair and the date that the job completed." Appellant's App. p. 72. However, this email was sent on June 26, 2012—after Dr. Flory's examination and report and the day before Travelers authorized Schinbeckler's surgery. This is clearly not evidence of Travelers lack of due diligence.[7]

[27]     Schinbeckler next claims that Travelers failed to exercise due diligence because no evidence in the record indicates that her injury was not work related. Again, this misallocates the burden of proof. It was Schinbeckler's burden to prove her claim, not Travelers' burden to disprove it. Moreover, this argument ignores the medical evidence indicating that Schinbeckler had issues with her legs and

_____

[7] Schinbeckler also claims that Travelers should have accepted the Accident Investigation Report as sufficient proof that her injury was work related. However, this report was filled out by Schinbeckler herself and does not appear to be any indication of the official position of her employer. We cannot fault Travelers for failing to consider Schinbeckler's self-report as conclusive evidence regarding the nature of her injury.

ankle in the past. In fact, even Schinbeckler herself questioned at one point whether her ankle issues were due to her previously undiagnosed diabetes. Until Dr. Flory's report, none of the medical records indicated that Schinbeckler's injury was work related. Indeed, her own physician, Dr. Jelen, was unable to give an opinion on the matter. Under these facts and circumstances, we cannot say that Travelers' decision to seek the medical opinion of another physician constituted a lack of due diligence.

[28] Schinbeckler also claims that Travelers' failure to have her medical records sent to Dr. Flory by the time of her first visit to him on May 17, 2012, is evidence of lack of due diligence. Obviously, this failure is not laudable. However, the Board was not obligated to view it as evidence of lack of due diligence. Not only did Travelers attempt to have Dr. Flory examine Schinbeckler without the medical records, it rescheduled the examination with Dr. Flory for June 7, 2012. This is not an overly long delay.

[29] The same is true for Schinbeckler's argument regarding the twenty days it took Travelers to approve her surgery following the examination by Dr. Flory. Following her June 7, 2012 examination, Dr. Flory issued his report. Travelers received this report on June 19, 2012, only twelve days later. Eight days after receiving the report, Travelers approved Schinbeckler's surgery. Although Schinbeckler argues that there is no explanation as to why it took twenty days for Travelers to receive Dr. Flory's report, it actually only took twelve days. Again, it was Schinbeckler's burden to prove her claim of lack of due diligence. Under these facts and circumstances, we cannot say that the Board clearly erred

by failing to view the twenty-day delay between Dr. Flory's examination and Travelers' approval of her treatment as evidence of a lack of due diligence.

[30]    Lastly, Schinbeckler claims that Travelers failed to exercise due diligence by evidence of the fact that she received no medical treatment for her injuries during the five months it took for her to receive surgery. Schinbeckler is referring to the time between March 2, 2012, when Travelers first learned of her injury, and July 11, 2012, when she underwent surgery. However, Schinbeckler herself waited from October 31, 2011, until March 2, 2012, to complete the accident investigation report which alerted Travelers of her injury. Once Travelers learned of the injury, it reviewed the medical records and found no indication that the injury was work related. Even when Schinbeckler's own physician, Dr. Jelen, could not form an opinion on the matter, Travelers scheduled an examination by another physician, Dr. Flory. From the time Travelers learned of Schinbeckler's injury (March 2, 2012) to the time it approved of her surgery (June 27, 2012), 117 days passed—just under four months. Her surgery took place fourteen days after it was approved. Although it is indeed unfortunate that Schinbeckler received no treatment for her injury during this time frame, and that, perhaps, Travelers could have done more to expedite Schinbeckler's claim, we cannot say that the Board clearly erred in concluding that this delay was not evidence of a lack of due diligence. Indeed, the Board is much more familiar with the issues surrounding the scheduling of medical examinations and treatments than are we, and the Board was well

within its discretion to consider these delays as unfortunate, but not necessarily evidence of a lack of due diligence on the part of Travelers.

## Conclusion

In short, certainly evidence exists of some delay between Travelers learning of Schinbeckler's injury and the final approval of her treatment and eventual surgery, and Travelers might have been able to respond to Schinbeckler's case more quickly. However, we are unwilling to substitute our judgment for that of the Board and conclude that the Board clearly erred in determining that Travelers exercised due diligence with regard to Schinbeckler's claim. Schinbeckler's arguments to the contrary are little more than a request that we consider facts not favorable to the Board's decision, reweigh the evidence, and come to a conclusion other than that reached by the Board. This is not our role as an appellate court.

Accordingly, we affirm the decision of the Board denying Schinbeckler's claim of a lack of due diligence on the part of Travelers.

Affirmed.

Kirsch, J., and Brown, J., concur.